UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 16-334(1) (JNE/KMM) |
| | ) | |
| PAUL R. HANSMEIER, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF PRETRIAL MOTION TO DISMISS**

---

Defendant Paul Hansmeier submits this Memorandum of Law in support of his Pretrial Motion to Dismiss the government's charges set forth in Counts 1-17 of the Indictment.  (ECF 1).  The government has issued a lengthy, winding, and jumbled charging document, all grounded upon an unorthodox and unviable legal theory.  Because it has opted to proceed in this way, this Memorandum is by necessity heftier than it might otherwise be.  Augmented size demands greater organization, so this paper begins with a Table of Contents to give the Court an overview of where the exploration will go, which then leads into the full discussion.  All of this requires a fair number of words, but in the end the resolution boils down to a relatively simple concept:  Prosecutors ought not be allowed to ground criminal fraud or analogous charges upon someone's exercise of constitutionally protected civil litigation activities.  As will be seen, this core rule is immensely important.  Not just in the case at hand, but to this nation's system of civil justice as a whole.  This prosecution is legally unviable, and thus must be dismissed.

(i)

**Table of Contents**

**Page**

I.   Introduction ................................................................................................. 1

II.  Legal Standard .......................................................................................... 3

    A. Pretrial motions to dismiss ................................................................. 3

    B. Scope of motion ................................................................................. 4

III. Background ............................................................................................... 6

    A. Legal context ..................................................................................... 6

        1.  American civil justice system ..................................................... 6

        2.  Civil procedure ........................................................................... 8

        3.  Discretionary civil judicial sanctions ......................................... 9

        4.  Initiating civil action despite potential defense ........................ 11

        5.  Regulation of lawyers .............................................................. 12

        6.  Law of copyright ...................................................................... 15

            (a). Copyright Act ................................................................... 15

            (b). Copyright infringement actions ....................................... 17

            (c). Computer file sharing ...................................................... 20

    B. Charged theory of prosecution ......................................................... 24

IV. Discussion ............................................................................................... 28

    A. Fundamentals of Mail/Wire Fraud .................................................... 28

        1. Fraud ......................................................................................... 28

        2. Property ..................................................................................... 29

    B. Civil litigation as theory of criminal liability .................................... 31

    C. Invalidity of government's Mail/Wire Fraud theory .......................... 37

        1.  Copyright holder uploading of protected works ........................ 37

            (a). Legal impact of alleged act ............................................. 38

            (b). Reasons for legal invalidity ............................................. 40

## Table of Contents (cont'd)

**Page**

    2. Lawyer's stake in litigation .......................................................... 42

       (a). Legal impact of alleged act ................................................... 43

       (b). Reasons for legal invalidity................................................. 44

    3. Lawyer's duty of candor to tribunals............................................ 45

       (a). Legal impact of alleged act ................................................... 46

       (b). Reasons for legal invalidity................................................. 47

    4. Settlement communications........................................................ 48

  D. Recalcitrant civil litigation conduct ≠ Mail/Wire Fraud .................................... 48

    1. Judicial sanctions and lawyer discipline....................................... 49

       (a). Judicial decisions imposing sanctions.................................... 50

       (b). Fraud upon the court ............................................................ 52

    2. Reasons for legal invalidity as a Mail/Wire Fraud theory........................... 54

  E. Global defects with this prosecution ................................................. 55

    1. Prosecutions for *prima facie* valid civil litigation ....................................... 56

    2. Individualized constitutional rights ............................................. 58

    3. Constitutional separation of powers ............................................ 58

V. Conclusion............................................................................. 60

**Table of Abbreviations**

ECF ............................................................................Electronic Case Filing System Entry

FRCivP .............................................................................. Federal Rules of Civil Procedure

FRCrP ........................................................................ Federal Rules of Criminal Procedure

MinnRPC ........................................................... Minnesota Rules of Professional Conduct

ModRPC ......................................................... ABA Model Rules of Professional Conduct

RICO ................................................. Racketeer Influenced and Corrupt Organizations Act

USAM .............................................................................. United States Attorneys' Manual

# I. Introduction

This is a peculiar case.  Not due to the claimed civil litigation activities of the accused lawyer, which arise with some frequency in this very tribunal amongst many others.   Nor due to the charged offenses themselves—a relatively commonplace interlocking nest of mail/wire fraud, conspiracy, and money laundering charges.  No, what makes the case at hand so odd is the legal theory the government has chosen to press: That a lawyer's actions in asserting civil copyright infringement actions somehow make out a valid legal theory for a criminal fraud prosecution.

It's worth pausing for moment to let that last sentence sink in.  By its legal theory propounded here, the federal government now proposes to: (a) arrogate authority unto itself; (b) to patrol the civil dockets of this and any other tribunal of its choosing; (c) searching for instances of what it views to be baseless or otherwise unethical or inappropriate civil litigation activities; (d) all with the aim of prosecuting, penalizing, and imprisoning those litigants or lawyers who it deems to have stepped out of line.  Or more accurately, anyone who the government chooses to target at any given moment. Prosecutors could, as in the present case, charge someone who has instituted a civil action against a fellow citizen to redress a legally recognized grievance.  But the government could just as easily train its sights on, say, a citizen who has brought a *Bivens* action against a federal law enforcement official.  Or it could bring similar charges against a detainee pursuing a civil *habeas corpus* action.  Or against a lawyer seeking a declaration that some statute enacted by the Legislative Branch violates the United States Constitution.  Or against a litigant seeking to enjoin some unlawful action of the Executive Branch.

The permutations are many and varied.  The straight-line path to mischief, easily spotted.  The legal theory the government presses here, if accepted, would impose an intolerable burden—indeed, a pall—upon this nation's longstanding and constitutionally protected system of civil justice.  A system that has long served as a forum for the fair and peaceful resolution of private disputes, every bit as much as an indispensable citizen's check upon the government itself.  A debt of gratitude is thus owed to the many courts—including this circuit's Court of Appeals—that have firmly rejected the theory which the government advances here.  Such courts have long recognized the perils just mentioned in holding that civil litigation activities cannot generate the sort of criminal liability being pursued here.  And partly to prevent the chilling effect the government's chosen legal theory naturally engenders, it is crucial that the charges be dismissed at the pretrial stage by way of this FRCrP 12 motion.  Discovery and trial would lead a broad swath of litigants and lawyers to self-censor, or to abstain entirely from their constitutional and traditional right to pursue civil legal actions.  All for fear of governmental reprisal in the form of criminal prosecutions like the one at hand.

These introductory thoughts in mind, the discussion can turn to the government's legal theory, *infra* § III, and why it fails as a matter of law, *infra* § IV. But before getting to that, it is necessary to briefly outline legal standard governing the Court's decision as to this Pretrial Motion to Dismiss.

## II. Legal Standard

### A.        Pretrial motions to dismiss

The motion at hand seeks pretrial dismissal of the fraud and money laundering components of this prosecution, owing to the government's propounded theory of the case, which is both legally and constitutionally invalid.  In such situations, the Federal Rules of Criminal Procedure permit pretrial motions to adjudicate "any defense, objection, or request that the court can determine without a trial on the merits," including fatal legal defects in the institution of the prosecution and/or charging document.  FRCrP 12(b)(1) & 12(b)(3).  Under these rules, a pretrial motion to dismiss a prosecution is appropriate when a dispositive defense may be adjudicated on purely legal grounds.  *United States v. Covington*, 395 U.S. 57, 58-61 (1969).  *Accord, e.g., United States v. Ahmed*, 94 F.Supp.3d 394, 404 (E.D.N.Y. 2015) ("Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds.").

Here, the government charges the accused lawyer Mr. Hansmeier with multiple standalone counts of Mail Fraud, 18 U.S.C. § 1341, and Wire Fraud, 18 U.S.C. § 1343, (Counts 2-16), both of which require the government to prove as an essential element some "scheme or artifice to defraud."  The money laundering conspiracy charge is likewise predicated on this showing.  But the articulated legal theory in support of these charges involves the accused lawyer's activities relating to the institution of civil litigation in courts of law—indeed, before this Court and other federal tribunals as well.  As will be shown throughout this paper, the government's legal theory fails on numerous legal grounds, requiring pretrial dismissal of this prosecution.  *E.g.,* FRCrP 12(b).

3

### B.    Scope of motion

The government charges not just standalone Mail/Wire Fraud counts, (Counts 2-16), but rather levels a number of separate criminal conspiracy allegations too, the relevant ones being:

| Count | Description | Statute | Citation |
|-------|-------------|---------|----------|
| 1 | Mail/Wire Fraud Conspiracy | 18 U.S.C. § 1349 | ECF 1 at 7-25 |
| 17 | Money Laundering Conspiracy | 18 U.S.C. § 1956(h) | ECF 1 at 29 |

The Court may thus wonder whether the present motion to dismiss is confined to the standalone Mail/Wire Fraud counts, (Counts 2-16), or if it encompasses the above conspiracy counts as well, (Counts 1, 17).[1]   Because the government's deficient prosecution theory pervades and fatally infects both the standalone and above conspiracy counts, all must fall.

The reason stems from the law of conspiracy, which is an inchoate offense involving a mere agreement rather than actual accomplishment of the underlying alleged criminal objective.  *United States v. Jimenez Recio*, 537 U.S. 270, 274-75 (2003).  The conspiracy charges at issue here—indeed seemingly all conspiracy statutes more generally—require at least two common and essential elements: (1) an agreement to "facilitate"; (2) some "endeavor which, if completed, would satisfy all of the elements of the underlying

[1] As to Count 18 of the indictment, the government charges a general conspiracy, 18 U.S.C. § 371, with alleged objectives involving perjury statutes, 18 U.S.C. §§ 1621 & 1622. (ECF 1 at 30-35).  Count 18 is outside the scope of the present motion to dismiss, and thus is not addressed in this Memorandum.  However, Count 18 does reference the government's Mail/Wire Fraud theory, which is being disputed here as legally unviable.  If it is later determined that the government's unviable legal theory infects Count 18 as well, that Count will be subject to dismissal as a matter of law as well.

4

substantive criminal offense." *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) (citations and punctuation omitted). That second common element is typically referred to as the "object" or "objective" of the charged conspiracy. *Id.*

If the alleged objective of a conspiracy fails as a matter of law, then so does the overlaying conspiracy charge. *See Griffin v. United States*, 502 U.S. 46, 51-56 (1991) (surveying Supreme Court cases holding that general guilty verdict in criminal case must be set aside if "one of the possible bases of conviction" was unconstitutional or contrary to law); *Yates v. United States*, 354 U.S. 298, 311-12 (1957) (verdict must be set aside when one charged objective of multi-objective conspiracy fails as a matter of law). *See also United States v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 (8th Cir. 1992) (jury verdict must be set aside if it may be based on a ground that is unconstitutional or illegal).

Thus, since the standalone Mail/Wire Fraud counts (Counts 2-16) are grounded upon a legally and/or constitutionally invalid prosecution theory, each such deficient count must be dismissed. *See, e.g., Covington*, 395 U.S. at 58-61; *Goodner Bros. Aircraft, Inc.*, 966 F.2d at 384. The government alleges this identical Mail/Wire Fraud theory as the sole objective of the Mail/Wire Fraud Conspiracy (Count 1), (ECF 1, ¶¶ 15-17), and the Money Laundering Conspiracy claim (Count 17), (ECF 1, ¶ 40). Under *Griffin/Yates* and the other opinions cited, these legally-deficient charged conspiracy objectives mean that that each of these conspiracy counts must fall away as well. With that, the discussion can return to the substantive issue at hand, *i.e.,* whether the government's asserted Mail/Wire Fraud theory passes legal muster.

### III. Background

So what is this disputed Mail/Wire Fraud legal theory?  The government's allegations are imprecisely sprawled across 36 pages of charging document, but the gravamen is the accusation that Mr. Hansmeier and others instituted "fraudulent copyright infringement lawsuits" in a number of civil tribunals.  (ECF 1, ¶¶ 1, 17, 23, 25, 26, 28). The government's proffered support for this core claim obliquely alludes to—but glosses over without citation to any legal authority—numerous sophisticated legal topics.  That being the case, this Background section will begin with a necessarily wide-ranging discussion of the legal context for the government's theory, after which the theory itself may be stated in a clear and succinct manner (at least, that is the goal).

### A.      Legal context

As just noted, the government's Mail/Wire Fraud theory centers on alleged "fraudulent copyright infringement lawsuits," a characterization which it attempts to support with numerous oblique references to the law of civil actions, civil procedure, regulation of lawyers, copyright infringement, and others.  The failure to supply citations for the legal propositions stated in the charging document forces the defense and the Court to do the work.  Here is the legal backdrop the government has declined to supply.

### 1.      American civil justice system

At the core of the government's prosecution theory is this nation's system of "civil justice."  *Dietz v. Bouldin*, 136 S. Ct. 1885, 1896 (2016).  The quoted phrase is apt; the Supreme Court has long recognized that access to civil courts is not only ingrained in this nation's judicial norms and traditions, but also rises to the status of inviolable constitutional

right.  "Decisions of [the high court] have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses."  *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (numerous internal citations omitted).  *See also* C. Andrews, *A Right of Access to Court under the Petition Clause*, 60 OHIO ST. L.J. 557 (1999).  This is a tradition and right that supplies citizens what is often the sole forum by which to redress legally recognized grievances, whether leveled against one's fellow citizen, *e.g., Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (private tort action), or the government itself, *e.g., NAACP v. Button*, 371 U.S. 415, 428-29 (1963) (civil action brought by civil rights organization against governmental body for purpose of declaring certain statutes unconstitutional).

Though the contours of the right have not been defined with precision, the Supreme Court has indicated its outer border is drawn at "objectively baseless" civil litigation, meaning a civil action in which "no reasonable litigant could reasonably expect success on the merits."  *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993).  By implication, though, civil litigation activities *are* legally and constitutionally protected when "an objective litigant could conclude the suit is reasonably calculated to elicit a favorable outcome."  *Id.*  The standard is forgiving, and rightly so given the weighty interest in encouraging citizens to resolve disputes in civil courts rather than via extra-judicial means which are frequently socially harmful or even violent.

7

Here, the government seems to equate what it views as "baseless" civil litigation at issue here, with what it mistakenly characterizes as "fraudulent" civil litigation. The government is plainly wrong on at least two grounds: (1) "baseless" civil litigation is not necessarily "fraudulent," partly because the machinery of civil procedure is available to civil defendants to examine the applicable law and facts, *see infra* § II.A.2; and (2) the government's allegations, even if assumed to be true, fail to make out a claim of "baseless" civil litigation. These points will be discussed at greater length below, but before getting to that there are a number of other legal concepts vaguely described in the charging document and left to be explained, beginning with the basics of civil procedure.

### 2.      Civil procedure

Modern civil courts have adopted highly permissive rules for the institution of a civil action, *e.g.,* permitting a litigant to initiate an action with nothing more than a plausible "short and plain statement of the claim showing the pleader is entitled to relief." FRCivP 8(a)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Recognizing the limitations of private citizens' capacity to conduct a full extra-judicial investigation, the civil plaintiff is granted the means to substantiate the allegations with firm evidence by way of the numerous court-overseen discovery tools, *e.g.,* subpoenas, depositions, interrogatories, request for production, *et cetera*. FRCivP 26-37 & 45.

The civil defendant gets all the same benefits. The defendant can admit, deny, or claim lack of knowledge as to the plaintiff's pleaded assertions, FRCivP 8(b), state affirmative defenses to the claims, FRCivP 8(c), assert counterclaims against the plaintiff, FRCivP 13, and take numerous other defensive or offensive actions. The defendant can

make use of the same discovery tools available to the plaintiff.  FRCivP 26-37 & 45.  The defendant can move to dismiss, FRCivP 12, or for summary judgment, FRCivP 56.  As this Court knows (since it encounters the above rules all the time), this just scratches the surface.  Civil defendants can and frequently do use the rules adeptly to defend against civil claims.  Oftentimes they take the opportunity to go on the offensive, by means of counterclaims or crossclaims, for example.   Or by requesting discretionary judicial sanctions, described next.

### 3.   Discretionary civil judicial sanctions

Sometimes one or both parties ask civil courts to impose judicial sanctions upon some other litigant.  Judicial sanctions are generally appropriate only upon a showing of "bad faith" in the institution or conduct of civil litigation.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980).  They may stem from different sources of law, such as procedural rules, *e.g.,* FRCivP 11 & 37, statutes, *e.g.,* 28 U.S.C. § 1927, and "inherent powers" of courts*, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-51 (1991).  But due to the "potency" of such powers, the Supreme Court has said they "must be exercised with restraint and discretion."  *Id.* at 44.  Hence, "Courts should consider the full range of sanctions and ensure that the sanctions imposed are not unnecessarily severe, but are instead tailored to address the harm identified."  2 MOORE'S FEDERAL PRACTICE—CIVIL § 11.41(5) (Lexis ed. 2017).  These may include, amongst others and in approximate order of severity from lesser to greater: (a) reprimand; (b) restrictions upon litigation tactics or activities; (c) disqualification of counsel; (d) adverse inference; (e) shifting litigation fees or costs; (f) dismissal.  *Id.*  The dismissal sanction is thus quite rare.  *E.g., Edgar v.*

*Slaughter*, 548 F.2d 770, 772-73 (8th Cir. 1977) (observing that, in deciding whether to impose sanctions, civil court should hold a hearing and, if sanctions deemed appropriate, explore sanctions "less extreme than dismissal").   "[I]n our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Id.*; *accord, e.g., Banco Del Atlantico, S.A. v. Woods Indus.*, 519 F.3d 350, 354 (7th Cir. 2008) (dismissal sanction is "last resort" to be employed in "rare cases").

With some frequency, litigants ask civil tribunals to impose sanctions due to an opponent's perceived "baseless litigation" or similar charge.   Civil courts are generally unreceptive to such requests.   This is because "even when a claim is ultimately meritless, sanctions are not appropriate where the plaintiffs had colorable legal arguments to support their claims."   *Wolfchild v. Redwood County*, 824 F.3d 761, 771 (8th Cir. 2016) (citations omitted).   Sanctions are thus particularly inappropriate when the field of law at issue is complex, the applicable law unsettled (such as copyright law at issue here, as will be discussed in a few moments).   *Id.*

These points are important because, as will be seen later on, the government's prosecution theory presumes that a civil litigant's arguably sanctionable conduct means that a civil action is "baseless" (and thus "fraudulent" in the government's estimation).   As the above authorities show, the government's premise is wrong.   And so too is another premise the government has put forward in its charging document, that the existence of a potential defense somehow converts a civil action into "baseless" litigation.

### 4.     Initiating civil action despite potential defense

In nearly every civil case, a lawyer or litigant can anticipate some defense the civil defendant might interpose.  But as shown above, the procedural rules place the onus of raising such defenses squarely upon the civil defendant.  FRCivP 8(c).  And "a plaintiff need not plead facts responsive to an affirmative defense before it is raised."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009).

Hence, the general rule is that a lawyer or litigant may (properly and without fear of sanction) bring a colorable civil action despite awareness of a potential defense that a civil defendant might raise.  This is especially so when the potential defense is uncertain to succeed.  *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1510 (11th Cir. 1993).  "An attorney need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation."  *White v. Gen. Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990).

Generally speaking, then, a lawyer and/or litigant is fully justified in bringing a civil action even if there exists a potential defense.  *Id.*  This is most certainly the case when the potential defense is of uncertain efficacy, *id.*, and even when the potential defense may be dispositive, *see, e.g.,* M. Galvin, *Can You Ethically Assert a Time-Barred Claim?*, Minnesota Lawyer (Nov. 2000); *see also* ABA Formal Op. 94-387, *Disclosure to Opposing Party that Statute of Limitations Has Run* (Sept. 26, 1994).

These concepts are important here because the government's theory of prosecution assumes that civil litigation is "baseless" and "fraudulent" if there exists a defense, which is not the case.  The government's faulty assumptions will be discussed in more detail later

11

on, but first it is necessary to explain yet more complex civil litigation topics that are vaguely alluded to in the government's charging document, namely the law of lawyers and copyright.

### 5.   Regulation of lawyers

Civil litigation is a complicated business, so to maximize odds of success a great many litigants have long turned to a professional class having special expertise in petitioning civil courts for relief.  This, of course, refers to attorneys at law—more commonly known as lawyers.  As one might expect, lawyers are subject to intensive regulation, often by the states in which they are licensed.  Using the State of Minnesota as an example, statutory codebooks are sprinkled with laws and regulations aimed at the conduct of lawyers, *e.g.,* MINN. STAT. Ch. 481 (2016) (entire chapter devoted to attorneys at law), perhaps most prominently the power of the Minnesota Supreme Court to prescribe rules governing "the examination and admission to practice of attorneys at law" within the state, as well as regulating "their conduct in the practice of their profession." *Id.* § 480.05. It is legislatively prescribed powers like these that have given force and effect to the state high court's MINNESOTA RULES OF PROFESSIONAL CONDUCT (MinnRPC), which in turn are largely based upon the American Bar Association's oft-used MODEL RULES OF PROFESSIONAL CONDUCT (ModRPC).  States vary in their precise approach to the regulation of lawyers, but most employ a system similar to Minnesota's.

So lawyers are most often regulated by the courts in which they appear and by the states in which they hold licensure.  Adding yet more layers of complexity, federal courts generally are not bound by any such state law pronouncements concerning how attorneys

ought to conduct themselves. *See, e.g.,* 1 G. Hazard, *et al.*, THE LAW OF LAWYERING § 1.17 (2017).[2]   Practically speaking, federal courts often borrow from the professional conduct laws of the state in which they sit, *see id.*, and sometimes do so explicitly by way of local rules, *e.g.,* D. Minn. LR 83.6(a).  But not all do, creating something of a patchwork for lawyers practicing in federal courts nationwide.  LAW OF LAWYERING § 1.17.

Federal courts, in short, have developed an *ad hoc* approach to regulation of lawyers who practice before them.  *See, e.g.,* 30 MOORE'S FEDERAL PRACTICE—CIVIL (Lexis ed. 2017) (entire volume devoted to "federal law of attorney conduct").  Federal courts may borrow state or ABA model rules of professional conduct, but may also decline to do so. *Id.* § 802.  Federal courts may interpret these rules differently than the state courts or licensing officials, and may impose different discipline or no discipline at all.  *Id.* § 806.04. Due to these "inconsistent local rules in the federal courts, both with regard to standards of attorney conduct and the process of attorney discipline," attorneys practicing in multiple jurisdictions may encounter vexing choice-of-law and other similar problems.  *Id.* § 806.05(1).

Again, the government's charging document glosses over all of this complexity and instead opts for vague and sweeping allusions to certain "duties" owed by attorneys to

---

[2] Exceptions involve situations where the federal legislature incorporates state rules to attorneys appearing before federal courts.  For example, a statute governs attorneys employed or retained by the federal government's Executive Branch: "An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."  28 U.S.C. § 530B(a).

"courts," as though each and every court throughout the nation imposed identical rules and standards.  Clearly, this is not the case.  The government does not even trouble to cite the source material for the "duties" it posits in the charging document, so the defense and Court are left to presume the government is referring to the ABA's MODEL RULES, apparently the following ones in particular:

| ModRPC | Text |
|---|---|
| **1.8** | **Conflict of Interest**<br><br>(i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:<br><br>(1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and<br>(2) contract with a client for a reasonable contingent fee in a civil case. |
| **3.1** | **Meritorious Claims and Contentions**<br><br>A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established. |
| **3.3** | **Candor Toward The Tribunal**<br><br>(a) A lawyer shall not knowingly:<br><br>(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;<br>* * *<br>(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. . . .<br>* * *<br>(d) In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse. |

As noted, the government's theory is that certain violations of the above model rules (or perhaps unspecified other rules, the charging document doesn't say), make the civil litigation activities at issue here "fraudulent."  This proposition is unsupported by any legal authority, so far as the defense can tell.  But before turning to that, this contextual background discussion requires one last short primer on the law of copyright and related civil actions for infringement, because the government is claiming "fraudulent *copyright* lawsuits."

### 6.     Law of copyright

### (a).     Copyright Act

The case at hand involves the institution of civil claims for the cause of action known as copyright infringement, which springs from the Copyright Act of 1976, PUB. L. NO. 94-553 (1976), *codified as amended at* 17 U.S.C. §§ 101-805.  This statutory regime was and is aimed at modernizing the law of copyright, which has long (as far back as the enactment of the U.S. Constitution with pre-constitutional English precursors) safeguarded the fruits of creative minds.  *E.g.,* H.R. REP. NO. 94-1476 (1976).  It does so by granting the creator a limited-term monopoly over various aspects of "original works of authorship," 17 U.S.C. § 102.

The creative work can take virtually any form, *e.g.,* paper-bound books, vinyl records, digitized computer files, or some future and as-yet-unimagined medium.  *Id.*  And *any* such "original works" may be protected by the Act without regard to some arbiter's subjective assessment as to artistic merit.  For example, a moving picture that might appear

15

wholly prurient in nature is entitled to the Act's protection, every bit as much as *Citizen Kane,* or *The Origin of Species,* or *When Doves Cry*, or whatever famous creative work comes to mind.

At all events, the Act provides any copyright owner a suite of statutorily granted "exclusive right[s]" with respect to her creative works, *e.g.,* to reproduce her work as she wishes, to distribute it as she wishes, and other similar rights. 17 U.S.C. § 106. As the term "exclusive" suggests, the Act prohibits anyone else from infringing upon these rights, *e.g.,* by reproducing the work for personal use or commercial exploitation. *Id.* In this way, the copyright owner is able to control her own creative work, including access to, reproduction of, and distribution of that work. She can, for example, accept remuneration to part with or license certain of her statutorily-granted exclusive rights. Or she can disperse her work far and wide, asking nothing in return. The Copyright Act leaves it entirely to the copyright holder to decide.

The statute balances its grant of exclusive rights to the work's creator, against the public's interest in lively discourse about creative endeavors more generally. Thus, a copyright holder's exclusive rights expire after a period of time. 17 U.S.C. § 302. And the statute permits the public's "fair use" of a copyrighted work for purposes such as "criticism, comment, news reporting, teaching[], scholarship, or research." 17 U.S.C. § 107. But these represent exceptions to the Act's general rule, *i.e.,* the copyright owner has the right to control the reproduction and distribution of her own work. 17 U.S.C. § 106. And the Act is serious about this grant of rights, creating a number of enforcement mechanisms described next.

### (b).   Copyright infringement actions

With the continual development of replicating technologies such as personal computers and similar devices, the Copyright Act has emerged as amongst this nation's most oft-violated and under-enforced laws.  In theory, a copyright owner discovering infringement of her work could seek redress by complaining to federal prosecutors.  17 U.S.C. § 506; *see also, e.g.,* USAM § 9-71.000 (federal prosecutors manual concerning criminal prosecutions of Copyright Act violations).  But such criminal actions are rare, and so copyright holders are mostly left to their own devices in policing violations of their rights under the Copyright Act.

That is where the aforementioned civil justice system enters the picture.  For the Act creates a statutory civil cause for a copyright owner to bring against "anyone who violates any of [her] exclusive rights."  17 U.S.C. § 501(a).  An aggrieved copyright holder must allege and ultimately establish two essential elements: (1) the plaintiff's ownership of a valid copyright; and (2) the defendant's copying of constituent elements of the work that are original.  *Feist Pubs. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  It is worth pausing right there for a moment to note a crucial point gleaned from the government's charging document—the government seems to concede that both elements are satisfied with respect to the civil litigation at issue.  That is to say, the government seems to concede the existence of certain registered works subject to copyright protection, and that certain civil defendants were computer users who copied those protected works via the fairly commonplace means of a digital file-sharing network.  Assuming this is the correct reading of the government's document, this amounts to a concession that there were, in fact, valid

*prima facie* civil causes of action for copyright infringement here.  More on this point later, but first let's complete this brief survey of copyright civil enforcement.

Perhaps anticipating the overriding role of private enforcement in the copyright arena, Congress granted copyright holders powerful tools to be deployed in such civil litigation, including the right to seek actual damages, *id.* § 504(b), and the optional right to seek statutory damages ranging from $750 up to $150,000 per violation, *id.* § 504(c).  And this is to say nothing of a full panoply of additional remedies available, *e.g.,* injunctive relief, *id.* § 502, impoundment of infringing articles, *id.* § 503, and/or shifting costs and attorney fees, *id.* § 505.  *See also Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994) (copyright holder permitted to engage in investigation for purpose of bringing civil enforcement action).

The discussion thus far might give the impression that copyright law and litigation is a straightforward arena of law.  This Court has first-hand experience with the matter, and knows reality to be quite the opposite.  There are numerous multi-volume treatises devoted solely to the topic.  *E.g.,* 1-16 NIMMER ON COPYRIGHT (Lexis ed. 2017) & 1-8 PATRY ON COPYRIGHT (Westlaw ed. 2017).  In the modern age, there are ever-evolving copyright-protected works, means of distribution, business models, and so on.  Copyright law is forced to adapt alongside all the rapid changes.  For present purposes, the point is that any lawyer or litigant venturing into the arena of copyright law faces a great many complex and uncertain legal doctrines.

Say, for example, a copyright holder discovers that her protected work has been digitized and traded via a computer file-sharing network.  As above, this means that the

copyright holder has a *prima facie* case for copyright infringement, and thus that she can bring an action in civil courts under the Copyright Act.  The civil defendant in such cases can and often does respond by asserting a number of affirmative defenses—some statutory and some judicially crafted.  For example, the civil defendant may invoke fair use, 17 U.S.C. § 107, deemed an affirmative defense to a civil infringement claim, *Harper & Row Pubs. v. Nation Enters.,* 471 U.S. 539, 549 (1985).  But the civil defendant may also avail herself of all manner of new and evolving judicially crafted affirmative defenses, such as estoppel.  *See, e.g., Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014).  Yet-more defenses to copyright infringement actions are nascent in the law, and somewhat protean as well. Very few are to be found in published jury instruction guides, either those issued by the official federal circuit committees, *e.g.,* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 17 (Rev. 2017) (apparently one of the more complete treatments on the topic, but still containing many gaps), or by private authors, *e.g.,* 4 Sand et al., MODERN FEDERAL JURY INSTRUCTIONS—CIVIL § 86B.03 (Lexis ed. 2017).  Thus, in the area of copyright, courts tend to rely on treatises such NIMMER and PATRY cited above, as particularly demonstrated by the Supreme Court's frequent citation to both, *see, e.g., Petrella, supra*.

        This regime of private civil enforcement has been in force and effect for more than 40 years.  It is a long-established fixture in federal civil courts of law, including this very Court.  It is also an extremely complex area of law, rife with pitfalls and uncertainties for civil plaintiffs and defendants alike.  Nowhere is this more evident than what is perhaps the modern age's most common milieu for copyright infringement actions, computer file-

sharing networks.

### (c). Computer file-sharing

To state a reality that will come as news to no one, civil copyright enforcement in our present Information Age often addresses the practice of sharing copyright-protected works via digitized computer networks. *See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 918-28 (2005). Though such digital file sharing is widespread, it is nonetheless equally clear that the practice constitutes a violation of the Copyright Act, and thus gives rise to legally enforceable civil copyright claims. *E.g., id.; A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."). Some copyright holders have thus borrowed a tack of criminal prosecutors, *i.e.,* selectively enforcing their Copyright Act rights in civil tribunals—partly to obtain civil relief, but also to deter the throngs who engage in these practices. *See, e.g., Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 910 (8th Cir. 2012) (requiring district court to award statutory damages in excess of $200,000 and impose injunctive relief against individual who shared digital files of copyright-protected works via computer network).

Now, it must be said there is plenty of debate amongst the Law Review set, public intellectuals, blog-writers, and the like as to whether or not all this makes for good public policy. But there is no debating one thing—at present this statutory regime carries the full force of law. *See, e.g., id.* And so copyright holders are entitled to exercise their statutory

20

and constitutional rights to seek enforcement by way of civil courts. Presumably the government will agree to at least that much.

What really raises hackles, however, are certain practices of lawyer entrepreneurship that have arisen in this arena. Business organizations have been formed for the purpose of enforcing Copyright Act rights on behalf of others. *See, e.g., Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1168 (9th Cir. 2013). Lawyers have used Copyright Act provisions, 17 U.S.C. § 512(h), and the civil rules, FRCivP 26(d), to obtain so-called "early discovery" as to the identity of otherwise-anonymous computer users engaged in the practice of copyright-infringing file sharing, such that civil proceedings may be instituted. *E.g., Digital Sin, Inc. v. Does,* 279 F.R.D. 239, 241-42 (S.D.N.Y. 2012); *accord, e.g., Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) (observing that "[w]ith the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line" thus justifying use of so-called "early" subpoenas to identify said tortfeasors). And once the apparently-infringing computer users are identified, lawyers have engaged in the (commonplace and entirely lawful) practice of sending correspondence seeking mutually agreeable settlement of potential claims. *See, e.g., Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1027 (D. Col. 2014).

There exists a contingent of voices who, it is fair to say, loathe the above-described practices, a sentiment that often extends to the Copyright Act more generally. Some activists use pejorative terms to describe those who engage in such litigation activities, the

current favored one being "trolls."[3]  But in principle, all of the above-described activities are in conformity with the law of copyright as it presently stands, described above.  *See, e.g., Malibu Media, LLC v. Does*, 950 F.Supp.2d 779, 780-88 (E.D. Pa. 2013) (describing successful civil copyright infringement action against computer file sharers); S. Balganesh, *The Uneasy Case Against Copyright Trolls*, 86 S. CAL. L. REV. 723, 780 (2013) (observing that the above-described activities and similar ones "comply perfectly with all of copyright law's formal rules").

It is true that this form of entrepreneurial legal practice is subject to errors and abuses, just as any other form of civil litigation activity.  For example, some courts have been concerned that "early"-issued subpoenas will yield names of computer users who might *appear* to have engaged in unlawful file-sharing, but who in reality did nothing of the kind and instead whose names were mistakenly returned owing to unforeseeable circumstances (*e.g.,* a friend or neighbor is permitted to use the computer at issue), or a technical glitch (*e.g.,* there exists a shared internet connection amongst many computers and the wrong user name is returned).  *See, e.g., Digital Sin*, 279 F.R.D. at 242.  Courts have worried that this kind of "false positive" might lead some innocent persons to pay settlement demands just to avoid conflict or embarrassment, particularly if the subject matter of the protected work is commonly viewed as prurient in nature.  *See id.*  And some

---

[3] On the debate's flip side, there are those who use pejorative terms like "pirates" to describe those accused of Copyright Act violations.  In truth, none of these or other puerile terms are helpful to sober legal analysis.  Quite the opposite.  The terms are mentioned here only because they are sprinkled prolifically throughout the literature, and even some court opinions, on this topic.  In all, the defense would discourage use of such invectives, as they are analytically unhelpful and unnecessarily inflammatory.

courts have admonished plaintiffs and their counsel engaged in such actions to not abuse the process by, for example, publicly embarrassing civil defendants for the purpose of gaining a litigation and/or settlement advantage. *See, e.g., Malibu Media v. John Doe*, 1:15-CV-1943, 2016 WL 1046934 at *2-*4 (E.D. Cal. Mar. 16, 2016).

All that being said—and this is a crucial point—the defense has found no court opinion that has held that the generalized entrepreneurial practice at issue is somehow unlawful or that it constitutes "baseless litigation." Rather, the opposite is true. *See, e.g., Malibu Media, LLC v. Does*, 950 F.Supp.2d 779, 780-88 (E.D. Pa. 2013). Even those courts expressing wariness over the possibility of errors and abuses acknowledge— explicitly and implicitly—that a copyright holder has the right to use the machinery of civil litigation to: (1) discover potential infringing activities of anonymous computer users; (2) develop evidence of said users' potential civil liability under the Copyright Act; (3) dispatch correspondence seeking to settle such potential claims prior to institution of a civil action; and (4) at their option, bring a civil action against a computer user if there exists a good faith basis to believe engaged in conduct violative of the Copyright Act. *See, e.g., id.*

So ends the legal-contextual background. Perhaps to the relief of all, this legal background portion describes the bulk of the government's allegations, and thus permits a succinct discussion of the government's alleged Mail/Wire Fraud theory, set out next.

B.      **Charged theory of prosecution**

The government's charging document employs rather striking language, frequently adopting the invectives of some civil copyright defendants and activists referenced earlier. (*E.g.,* ECF 1, ¶ 17 (describing settlement communications as "extortionate tactics"); ¶ 17 (describing early discovery procedures as "coercing courts")).  In reality, the government is describing the very type of entrepreneurial copyright practices that civil courts approve of and countenance all the time, as set out above.  Crucially, the government never claims that any computer user targeted for civil action *didn't actually violate the Copyright Act by engaging in unlawful file sharing*, or at least there was reason well beyond good faith to believe that he did.  Rather, as noted earlier, it appears that the government concedes that the two essential elements of copyright infringement were met in most if not all instances at issue here: (1) existence of a valid copyright over the work at issue; (2) a civil defendant who copied the work (or apparently did so) via computerized digital file-sharing.  *Feist Pubs.*, 499 U.S. at 361.

Put differently, it appears the government's theory of "fraudulent copyright infringement lawsuits" is not based upon the idea that targeted computer users were innocent of Copyright Act-violating file-sharing activities; rather, the government seems to concede that some if not all *were* legitimately subject to civil liability, at least *prima facie*.  The government instead appears to be proceeding on a theory that the accused lawyers' alleged file-uploading and alleged lapses of professional ethics rules somehow gave rise to impenetrable defenses to such claims, such that asserting the claims was felonious.  This despite the authorities mentioned earlier, holding that a civil plaintiff

24

properly brings an action even if he is aware of a defense, particularly when the defense is waivable and/or uncertain.   In any event, the government then seems to parlay this presumption as to viability of civil claims into a Mail/Wire Fraud theory.   A bold and heterodox approach.   But also a legally wrong one, dangerous to this nation's system of civil justice, as will be shown later.

The government gets there by first observing the accused Mr. Hansmeier was a licensed lawyer, (ECF 1, ¶ 2), who as such "owed a duty of candor" to civil courts generally, and particularly with respect to *ex parte* proceedings, (ECF 1, ¶ 4).   Mr. Hansmeier and his business associates, it is alleged, formed certain professional business entities commonly known as law firms.  (ECF 1, ¶¶ 8-10).   According to the government, these same individuals also formed and exercised *de facto* control over a number of business organizations.  (ECF 1, ¶¶ 13-14).   For reasons that elude ready explanation, the government describes the latter business organizations thus: "[S]ham clients that purportedly owned copyrights to the pornographic movies . . . but which the defendants in fact owned and controlled themselves."  (*Id.*).   Presumably, by this the government is saying the accused lawyers initiated civil copyright actions naming as plaintiffs certain business organizations under their control.  Note, however, the government seems to admit that all the works at issue were Copyright Act-protected with all attendant rights held by *someone*—whether it be business entities or the accused lawyers.  (*See id.*).

The government goes on to claim that Mr. Hansmeier and others "uploaded the [protected works] to file sharing websites hoping to lure people into downloading" those same protected works.  (ECF 1, ¶ 17).   In conclusory and unsupported fashion, it dubs this

arrangement a "trap."  (ECF 1, ¶ 17).

The charging document then goes on to say the defendant lawyers "filed false and deceptive copyright infringement lawsuits," a characterization it justifies with the explanation that the defendants "concealed their role in distributing" the works, plus "their significant personal stake in the outcome of the litigation."  (*Id.*).  The government alleges that the defendant lawyers misused the civil discovery process to "identify" the names of the computer users who engaged in the above-referenced file-sharing activities.  (*Id.*). Finally, the government says this: "[T]he defendant used extortionate tactics to garner quick settlements from individuals who were unaware of the defendants' role in uploading the [protected works at issue], and often were either too embarrassed or could not afford to defend themselves."  (*Id.*).  Last, the charging documents says that the defendants lied to courts about all of this.  (*Id.*).

And there, in sum and substance, is the government's Mail/Wire Fraud theory in this matter, set forth to the best of the defense's powers of discernment.  The remainder of the charging document supplies some additional alleged details, but otherwise adds nothing more to the overall Mail/Wire Fraud theory, which can now be succinctly stated this way—

### Charged Mail/Wire Fraud Theory

According to the government, the accused lawyer Mr. Hansmeier is criminally liable for the federal offenses of Mail/Wire Fraud and money laundering due to his institution of "fraudulent copyright lawsuits," which (it is claimed) qualify as such because—

(a).    The defendant lawyers and others "uploaded the [protected works] to file sharing websites hoping to lure people into downloading" those same protected works;

(b).    The defendant lawyers owned and/or controlled the statutory exclusive rights in protected works rather than the named plaintiff business organizations, thus giving the defendant lawyers a personal stake in the outcome of the litigation;

(c).    The defendant lawyers were derelict in their professional ethics obligations, including a duty of candor to federal civil courts when invoking court-overseen discovery procedures to identify computer users who had downloaded the protected works at issue; and

(d).    The defendant lawyers employed "extortionate tactics to garner quick settlements" from such identified computer users, who were "unaware of the defendants' role in uploading the [protected works at issue], and often were either too embarrassed or could not afford to defend themselves."

As the remainder of this Memorandum will demonstrate, this is not a legally-valid theory of Mail/Wire Fraud.  Moreover, the theory and this prosecution itself seeks to criminalize the constitutional right to access civil courts, as well as the separation of powers amongst coordinate branches of the federal government.  Finally, if accepted by this Court, the government's theory of prosecution presents a tremendous and intolerable intrusion into this nation's constitutionally-protected civil justice system.  As next discussed, the government's legal theory must be rejected, its prosecution dismissed.

## IV. Discussion

Now we reach the core question: Does the above-stated claim of "fraudulent copyright lawsuits" constitute a legally-valid Mail/Wire Fraud theory?  Upon examining core principles of Mail/Wire Fraud law, *infra* § IV.A, and their application to civil litigation activities, *infra* § IV.B, the plain and emphatic answer is no.

### A.        Fundamentals of Mail/Wire Fraud

The government charges a violation of the federal mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343, both of which proscribe a "scheme or artifice to defraud."  Since the quoted phrase is vague and imprecise standing on its own, the Supreme Court and other tribunals have placed some bounds upon its scope—

#### 1.        Fraud

First and foremost, any Mail/Wire Fraud theory must include alleged "fraud," which means "wronging one in his property rights by dishonest methods or schemes," typically involving "the deprivation of something of value by trick, deceit, chicane or overreaching." *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (citations and internal punctuation omitted).  But there exists a critical distinction between what courts have accepted as "fraud" and mere generic "deceit."  *E.g., United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir. 2016).  The former contemplates a falsehood that tricks another into taking leave of his own property, as the Supreme Court's above-quoted language indicates.  *Id.* The latter is *any* falsehood, which may or may not cause even the slightest harm.  *Id.*  Thus, a Mail/Wire Fraud charge fails and is *not* legally viable if it alleges mere "misrepresentations amounting only to deceit" *Id.* at 1314.  A viable Mail/Wire Fraud

28

charge requires more than just a mere alleged falsehood; rather, it requires an alleged *material falsehood*, described next.

Though the Mail/Wire Fraud statutes do not explicitly mention the concept of materiality, the Supreme Court has construed them both to require an alleged "materiality of falsehood" to be legally viable. *Neder v. United States*, 527 U.S. 1, 25 (1999). A falsehood is "material" if it "would be of importance to a reasonable person making a decision about a particular matter or transaction." *United States v. Heppner*, 519 F.3d 744, 749 (8th Cir. 2008). That is to say, to be deemed "material" an alleged falsehood must be "likely to affect the decisions of a party on the other side of the deal." *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016). This means that alleged misrepresentation "amount only to deceit are insufficient" to make out a Mail/Wire Fraud prosecution; but rather there must be created a "discrepancy" between what is reasonably anticipated and what actually occurs with respect to the transaction at issue. *United States v. Shellef*, 507 F.3d 82, 108-09 (2d Cir. 2007); *accord, e.g.*; *United States v. Jackson*, 2017 WL 1129941, at *4-*5 (N.D. W. Va. Mar. 24, 2017). And of course the alleged falsehood must be such that it directly induces the complainant to part with his property. *E.g., Id.; Takhalov*, 827 F.3d at 1312-14. That last term then raises the question of what is meant by "property" for Mail/Wire Fraud purposes, the next topic.

## 2. Property

The Supreme Court has held that the Mail/Wire Fraud statutes are "limited in scope to the protection of property rights." *Cleveland v. United States*, 531 U.S. 12, 18 (2000) (citation omitted). Thus, to be legally viable, the accused must contrive a fraudulent

scheme to deprive another of a legally-recognized property right. *Id.* at 15. And the object of the fraud must constitute a recognized property right while in the alleged victim's possession, no matter what the interest might morph into once it transfers elsewhere. *Id.* at 15, 26. So, for example, there is no legally-viable Mail/Wire Fraud theory when someone lies to a state governmental official in order to procure a statutorily-mandated license permitting some regulated activity or other, because in that case the state licensing authority is holding a regulatory prerogative and not a property right. *Id.* at 20-22, 26-27. This is so even though such a license, once issued, might then morph into a property interest once granted to a licensee. *Id.* at 15. All this means that, in order to make out a valid Mail/Wire Fraud claim, the property right at issue must be one that is firmly-recognized under the law. It cannot be some mere regulatory prerogative, *see id.*, nor some "ethereal" interest such as a claimed "right to accurate information," *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014).

In sum, then, a legally-viable Mail/Wire Fraud theory must include allegations that meet at least these fundamental and legally-essential criteria: (1) ***fraud*** (*i.e.,* a trick that directly prompts the alleged victim to part with his property); (2) ***materiality*** (*i.e.,* a falsehood that goes to the core of what the alleged victim understands the terms of the transaction to be and thus directly affects her decision-making thereto); and (3) ***property*** (*i.e.,* deprivation of a legally-recognized property interest; not a regulatory prerogative, nor some claimed ethereal right to accurate information or the like).

Here, the government grounds its Mail/Wire Fraud theory upon certain civil litigation activities of the accused. As will be shown, all aspects of the theory on offer fail

one or more of the above fundamentals, and in any event the theory is categorically barred by the applicable case law described next.

### B.    Civil litigation as theory of criminal liability

Courts—including the Eighth Circuit Court of Appeals and lower courts within this circuit—have long rejected the theory the government propounds here, *i.e.,* that civil litigation activities can somehow generate liability under federal criminal fraud or analogous statutes.  Indeed, this Circuit's Court of Appeals has rejected the government's propounded legal theory.

To illustrate, in *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), a shipping company contractually owed money to a number of sea vessel owners, but was unable to pay due to insolvency and conflicting contractual agreements with a banking institution.  During a meeting, an attorney for the sea vessel owners informed the shipping company that it must make payment or face civil action.  The shipping company said the "threat to sue was utterly groundless and amounts to extortion."  *Id.* at 266.  The sea vessel owners nonetheless did bring a civil action in state district court, though they were ultimately unsuccessful in the effort.  *Id.*  The shipping company responded to this favorable result by filing its own lawsuit against the sea vessel owners in federal district court, alleging a civil RICO cause of action and claiming the sea vessel owners' civil litigation activities amounted to "racketeering" activities including "extortion," *id.* at 267, a term frequently and somewhat imprecisely invoked by the government in its charging document here.

The state district court in which the sea vessel owners originally brought their claim

ruled against the plaintiffs, but found the claims were *not* frivolous, nor asserted in bad

faith. *Id.* at 266 n.2. Nonetheless, the Court of Appeals "assume[d] for the purposes of

argument (though the state court has found otherwise) that the threat to sue was groundless

and made in bad faith." *Id.* at 267. Even operating under that assumption, the Court of

Appeals found that allegedly baseless litigation activities could not, as a matter of law,

form the basis of such a criminal violation, in part because it simply did not fit the criminal

statutory definition of "extortion," *i.e.,* "the obtaining of property from another, with his

consent, induced by wrongful or threatened force, violent, or fear." *Id.* The Court of

Appeals said this: "[Threats and actual institution of a baseless civil action] may be tortious

under state law, but we decline to expand the federal extortion statute to make it a crime."

*Id.*

>       Beyond that, the Court of Appeals had these broader concerns:
>
>       [I]f we were to hold that two threats to file a civil action . . . constituted a
>       "pattern of racketeering activity," citizens and foreigners alike might feel that
>       their right of access to the courts of this country had been severely chilled.
>       Judges and lawyers often complain that the courts are inundated with a flood
>       of litigation, but the fact remains that litigation is as American as apple pie.
>       If a suit is groundless or filed in bad faith, the law of torts may provide a
>       remedy. ***Resort to a federal criminal statute is unnecessary.***

*Id.* at 267-68 (emphasis added). Likewise, judicial officers in this very district have

squarely rejected legal theories that attempt to convert civil litigation activities into federal

criminal offenses. *Luther v. Am. Nat'l Bank of Minn.*, Civ. No. 12-1085, 2012 WL

5471123, at *6-*7 (D. Minn. Oct. 11, 2012) (collecting cases).

A natural extension of principles from *I.S. Joseph* may be found in *United States v.*

*Pendergraft*, 297 F.3d 1198 (11th Cir. 2002). There, just like in the case at hand, federal

prosecutors charged the accused with mail fraud and conspiracy (with at least one alleged object being mail fraud) on the basis of their civil litigation activities.  The accused was a physician whose practice included providing abortions, which of course is a highly controversial practice in many parts of this nation (just as the sort of computer file-sharing lawsuits at issue here is controversial).  So it proved to be in the county where the physician chose to open his practice, and the local officials sent him correspondence asking him to "reconsider his plans" to open a clinic.  *Id.* at 1200.  The physician and his business associate responded with communications to the effect that this might be arranged if the county would purchase his building for a "good price," at which point the county officials called upon FBI officials to conduct a surreptitious investigation to include recorded telephone conversations and the like.  *Id.* at 1200-01.

As happens with such local disputes, what followed was a long and twisting series of heated communications, threats of civil action, then civil action, court filings, and all the rest, fitting the familiar pattern one sees in such situations.  *Id.* at 1201-02.  Only this time, the FBI took up the mantle of county officials, and from their secret surveillance activities knew the physician's business associate had filed a false affidavit to support a civil action. *Id.*  Federal prosecutors tried to use the above situation to bring a criminal action against the physician and his business associate for extortion, mail fraud, and conspiracy, amongst other charges.  *Id.* at 1202-03.  The district court denied a pretrial motion to dismiss and the trial jury eventually returned a guilty verdict.  *Id.* at 1203-04.

The Eleventh Circuit Court of Appeals reversed the convictions for extortion and mail fraud.  The court of appeals held as a matter of law that civil litigation, "even if made

in bad faith and supported by false affidavits," was not "wrongful" within the meaning of the extortion statute, *id.* at 1208, nor a requisite "trick" needed to support a mail fraud charge, *id.* at 1209. The county officials knew full well that the affidavits were false, so the alleged victim was not fooled in the slightest. *Id.* And in any event the very purpose of the civil courts is for parties to attack and expose such falsity, which the county officials had every opportunity to do. *Id.*

Notice how these holdings dovetail with the fundamentals of Mail/Wire Fraud mentioned earlier. That is, such civil litigation activities—even those that are "baseless" in law or fact—do not constitute "fraud" because the other litigant is not tricked. It is not "material" because the other litigant is not fooled in the slightest, and in any event has an ideal forum to expose the other litigant's falsehoods in the civil litigation system itself. Further, note the implicit holding that the *minimal* criterion for any such theory is that the civil litigation at issue is "baseless," as described earlier.

Probably the leading case seeming to reach a different result is the Second Circuit Court of Appeals' opinion in *United States v. Eisen,* 974 F.2d 246 (2d Cir. 1992). This was a criminal RICO case involving alleged acts of wire fraud by lawyers and their employees. The evidence at trial revealed the lawyers earned contingency fees from personal-injury civil actions, but accomplished this feat in part by "pressuring accident witnesses to testify falsely, paying individuals to testify falsely that they had witnessed accidents, paying unfavorable witnesses not to testify, and creating false photographs, documents, and physical evidence of accidents for use before and during trial." *Id.* at 251. The court of appeals held that this was sufficient to make out a Mail/Wire Fraud theory,

34

reasoning that the requisite trickery was accomplished by "concoct[ing] testimony that . . . has been wholly fabricated" to induce pretrial settlements and perhaps false trial results. *Id.* at 253. Put differently, this case involved "fake evidence" which was deemed to "defraud the adverse party." *Id.* One suspects the government will heavily rely upon this opinion, but closer inspection shows this holding does the government no good at all.

*First,* the *Eisen* case involves wholly-invented evidentiary grounding for core allegations making out a *prima facie* basis for the civil claims at issue. In contrast, in the case at hand the government appears not to deny that the individuals the lawyers accused actually *did* violate the Copyright Act via digital file-sharing, or else there was a good faith basis to believe that they did. This crucial difference means the *Eisen* case does not support the charges in this case. *Second*, courts have construed *Eisen* quite narrowly, agreeing with the general rule of *I.S. Joseph* and *Pendergraft* that allegations internal to civil litigation and thus amounting to "abuse of process or malicious prosecution" claims do not make out a valid RICO theory; and the *Eisen*-type theory can only possibly be viable when there is an allegation of racketeering-type activity external to the civil litigation, *e.g.,* concocting "fake evidence" to later be used in civil litigation. *See, e.g., Daddona v. Gaudio*, 156 F.Supp.2d 153, 160-64 (D. Conn. 2000). *Last,* to the extent the *Eisen* case conflicts with the Eighth Circuit's opinion in *I.S. Joseph* and its natural extension as illustrated in *Pendergraft*, this Court is beholden to the Eighth Circuit Court of Appeals' opinions, not those of the Second Circuit.

There are at least three key takeaway points to be gleaned from these opinions:

(i).     As a minimal threshold there can be no valid claim of extortion, or Mail/Wire

Fraud, or any analog listed in the RICO statute (18 U.S.C. § 1961) or elsewhere, absent a showing that the civil litigation at issue is wholly "baseless" as defined earlier.

(ii).    Under *I.S. Joseph* and *Pendergraft*, even baseless and bad-faith civil litigation must be immunized from such actions, partly due to the unique nature of civil litigation and partly due to the intolerable interference such actions would inflict on this core constitutional right.

(iii).    The only possible exception (though seemingly not embraced in this circuit) is one in which the actor first takes unlawful action outside the arena of civil litigation (*e.g.,* concocting "fake evidence" to trick an insurance company) and then uses civil litigation as a mere instrumentality thereafter.    In contrast, invocation of criminal statutes is not permitted if alleged acts are internal to the civil litigation itself and thus amount to a *de facto* malicious prosecution claim.

All these concepts just outlined can now be applied to the government's allegations, ultimately revealing the fraud and money laundering allegations as legally unviable.

### C.     Invalidity of government's Mail/Wire Fraud theory

The government's theory is set out above, but for convenience here it is again: The government's Mail/Wire Fraud theory is predicated upon allegedly "fraudulent copyright lawsuits," which (it is claimed) qualify as such because—

(1).    The defendant lawyers and others "uploaded the [protected works] to file sharing websites hoping to lure people into downloading" those same protected works;

(2).    The defendant lawyers owned and/or controlled the statutory exclusive rights in protected works rather than the named plaintiff business organizations, thus giving the defendant lawyers a personal stake in the outcome of the litigation;

(3).    The defendant lawyers were derelict in their professional ethics obligations, including a duty of candor to federal civil courts when invoking court-overseen discovery procedures to identify computer users who had downloaded the protected works at issue; and

(4).    The defendant lawyers employed "extortionate tactics to garner quick settlements" from such identified computer users, who were "unaware of the defendants' role in uploading the [protected works at issue], and often were either too embarrassed or could not afford to defend themselves."

The whole of the earlier discussion coalesces to invalidate this Mail/Wire Fraud theory, which can be shown by examining each of these rationales in point-by-point fashion:

### 1.     Copyright holder uploading of protected works

The core allegation underlying the government's Mail/Wire Fraud theory appears to be a claim that the accused lawyer Mr. Hansmeier and others exerted *de facto* control over certain copyright-protected works and then intentionally uploaded digital files containing such works to file-sharing computer networks, all in the hopes that computer

users frequenting such sites would violate their copyrights by downloading those same files and thus become targets of civil Copyright Act claims.  As noted earlier, there exist a fair number of activists who find such a practice morally abhorrent, and by its Mail/Fraud theory the federal prosecutors advance these views.  The problem is, assuming for present purposes that the government's allegations are true, the alleged practice is lawful under now-existing Copyright Act law, and thus cannot be said to give rise to a "fraudulent copyright lawsuit" as the government claims.

### (a).    Legal impact of alleged act

As mentioned earlier, it appears the government concedes that the works at issue were subject to copyright protection, whether held by business organizations, the accused lawyers, or both.  And it appears the government also concedes that the computer users at issue here did, in fact, violate the Copyright Act via digital file-sharing activities (or, at least, that a better than good faith belief existed).  This gives rise to a *prima facie* civil case of copyright infringement.  *Feist Pubs.*, 499 U.S. at 361.

The government's theory seems to claim that alleged "uploading" activities on the part of a copyright holder somehow vitiate the civil cause of action entirely.  Not so.  Recall that the Copyright Act grants the copyright holder sole and exclusive rights to control the work at issue, including the rights to reproduce, distribute, or display the work any way the copyright holder wishes—including uploading to file-sharing websites for whatever reason.  17 U.S.C. § 106.  And uploading copyrighted works to a file-sharing site does not vitiate such a claim, according to the courts that have examined the issue:

38

> The Court likewise strikes Doe's second affirmative defense, in which he alleges estoppel based on his contention that Malibu or its agents have seeded Malibu's own content onto BitTorrent sites, where it is readily available for downloading. For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment. Doe does not allege that Malibu did anything that misled him to believe that the conduct constituting the alleged infringement was legal or condoned by Malibu. Doe does not contend that he was aware of the alleged seeding by an agent of Malibu. And there is no basis to believe that the mere availability of Malibu's content on BitTorrent would have given Doe the impression that the content was unprotected by copyright law or that its downloading and redistribution was legal.

*Malibu Media, LLC v. Doe*, 2014 WL 2581168, at *3 (N.D. Ill. June 9, 2014) (citations and punctuation omitted). Perhaps, depending on all manner of facts and circumstances, a copyright holder's actions *might possibly* give rise to certain full or partial defenses to civil copyright infringement. *See id.* at *4-*5 (declining to strike equitable defense of implied license at pretrial stage of proceedings). But victory is by no means assured or even likely, which is why the entire matter is supposed to be hashed out within the confines of civil courts. *See id.*; 2 PATRY ON COPYRIGHT § 5:131 (discussing doctrine of implied license, including civil defendant's burden of proof, varied formulations of doctrine, limitations on doctrine, and issues regarding scope of implied license, amongst many other complexities). Such actions by a copyright holder certainly do not give rise to so much as a valid civil counterclaim by the accused computer user against the copyright holder, *see, e.g., Malibu Media, LLC v. Thal*, 2016 WL 7240764, at *3-*4 (N.D. Ill. Dec. 16, 2016), much less the criminal prosecution here.

39

In sum, then, it appears the core of the government's Mail/Wire Fraud theory is predicated upon a misapprehension of the law of copyright, particularly the effect of a copyright holder allegedly uploading protected works to a file-sharing website and then monitoring for unlawful copying behavior.  Such activity has no effect at all upon the copyright holder's *prima facie* case for civil copyright infringement.  And whatever effect it has upon the ultimate outcome of such a suit is fact-intensive, uncertain, and fully within the purview of civil courts to adjudicate.

### (b).    Reasons for legal invalidity

Thus, the government's first and apparently principal rationale fails to state a valid Mail/Wire Fraud theory for multiple reasons already described, but summarized here:

(i).    The allegations reveal that a good faith basis existed for the defendants to believe the computer users at issue here did, in fact, retrieve copyright-protected works via a computer network.  This means there existed a *prima facie* case for copyright infringement.  Thus, the civil litigation at issue was neither "baseless" nor in "bad faith," which in turn means a valid Mail/Wire Fraud charge based upon the civil litigation is legally impossible.  *See, e.g., I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) & *supra* § IV.B.

(ii).    The government seems to hang its hat on alleged actions of the accused Mr. Hansmeier and others—particularly the alleged uploading of the works at issue to the computer network—which it apparently views to be dispositive defenses to the above *prima facie* case.    But as just shown, the government's relied-upon defenses are inapplicable, or most charitably deemed highly uncertain.  Fundamentally, a civil plaintiff

is permitted to bring an action despite the existence of a potential defense, particularly when the defense is of the uncertain variety at issue here.  Again, then, the government's allegations fail to meet even the minimal "baseless" or "bad faith" civil litigation test.  *See, e.g., I.S. Joseph, supra*; *Malibu Media, LLC v. Doe*, 2014 WL 2581168, at *3 (N.D. Ill. June 9, 2014); *White v. Gen. Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990); *supra* §§ III.A.4 & IV.B.

(iii).   As illustrated by *I.S. Joseph* and *Pendergraft*, this allegation constitutes neither extortion nor Mail/Wire Fraud.  The civil defendant computer users are not tricked into using the file-sharing network nor downloading the works at issue, but rather they do so of their free will.  Should they wish to mount a defense to a civil infringement action—including by claiming some defense relating to the copyright holder allegedly uploading the works to a file-sharing network—they are able to do so via civil discovery and motion practice, the proper venue for the litigation of such claims.  *See, e.g., I.S. Joseph, supra*; *Pendergraft, supra; Malibu Media, LLC v. Doe*, 2014 WL 2581168, at *3 (N.D. Ill. June 9, 2014); *supra* § IV.B.

(iv).   The allegation thus fails a number of Mail/Wire Fraud fundamentals.  The alleged act is not "fraud" because there is no trick that directly prompts the alleged victim to part with his property.  The copyright holder has a statutory right to put the works where he or she wishes, including file-sharing sites.  There is no duty (alleged by the government or otherwise) for a copyright holder to disclose this to would-be computer users seeking to copy the works.  And a civil defendant is fully empowered to discover this and try to mount a defense based upon it.  For the same reasons the "materiality" criterion is missing,

41

because there is no falsehood that goes to the core of what the other party understands the terms of the transaction to be and thus directly affects her decision-making. Again, the copyright holder can put protected works wherever she likes, and the civil defendant can use civil discovery and motions to mount a defense based upon those actions. *See, e.g., I.S. Joseph, supra*; *Pendergraft, supra; Malibu Media, LLC v. Doe*, 2014 WL 2581168, at *3 (N.D. Ill. June 9, 2014); *supra* § IV.B.

(v).   *I.S. Joseph* and *Pendergraft* present a categorical bar to this prosecution. *Eisen* is out-of-circuit and possibly inconsistent, and in any event would not save the prosecution at hand, because that case involved concoction of "fake evidence" to bring a civil action, whereas here the government seems to concede that the evidence of the civil defendants' use of computer file-sharing networks to copy protected works is very real. *Eisen* permits prosecution only for civil-litigation-external bad acts like created "fake evidence" to trick others, not civil-litigation-internal acts more akin to malicious prosecution actions. The government's theory here quite plainly falls into the latter category. *See, e.g., I.S. Joseph, supra*; *Pendergraft, supra.*

In sum, the government's core and principal allegation fails to state a valid Mail/Wire Fraud theory of prosecution. As will be seen, the remaining components make for ever-weakening rationales.

## 2.    Lawyer's stake in litigation

Next, the government bases its Mail/Wire Fraud theory upon the allegation that the accused lawyer here owned and/or controlled the statutory exclusive rights in protected works rather than the named plaintiff business organizations, thus giving the defendant

lawyer a personal stake in the outcome of the litigation. This plank of the government's theory amounts to an attempt to elevate the Rules of Professional Conduct into a basis for the imposition of criminal liability. The provision seemingly at issue states: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client" with the exceptions of attorney liens and contingent fees arrangements. ModRPC 1.8(i). This aspect of the government's theory fares even more poorly than the first one.

### (a).   Legal impact of alleged act

The biggest problem with this aspect of the government's theory is that, even if true, it would not constitute a dispositive defect to an otherwise-valid civil copyright claim. Thus, the allegation wouldn't make the civil action "baseless," and certainly not fraudulent. To begin, as noted earlier, federal courts (such as the civil federal courts at issue here) aren't even necessarily bound by state rules of this sort. Even when federal courts *do* adopt such rules, the most that is reasonably likely to occur in the face of a violation is disqualification of counsel, though lesser sanctions appear to be more common. *See, e.g.,* 30 MOORE'S FEDERAL PRACTICE—CIVIL § 808.02. Federal courts have noted the widespread criticism of the rule at issue, and have commonly used their discretion to curtail the imposition of sanctions. *See, e.g., Hernandez v. Guglielmo*, 796 F.Supp.2d 1285, 1291-95 (D. Nev. 2011). The decision is entirely up to the civil court presiding over the matter. The government is just wrong to suggest that such an alleged violation would somehow render a civil lawsuit "baseless," let alone "fraudulent."

Perhaps the government is saying that lawsuits were instituted under the name of

the wrong party in interest.  That the named plaintiff should have been the defendants individually rather than whatever business entity appeared on the caption to the civil papers.  If so, this is no dispositive impediment to a civil lawsuit's viability; substitution of the real party in interest can be and often is achieved with no trouble whatever.  FRCivP 17; *accord, e.g., Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 19-21 (2d Cir. 1997)*.*  At most, the matter would be a highly uncertain tactic in the hands of a civil defendant. It is not, and ought not be allowed to become, a basis for criminal liability.

Or perhaps the government is saying that such information, if true, would assist a civil defendant in making out some defense to copyright infringement, such as those mentioned in the prior section.  Even assuming this is so, such defenses would be uncertain at best, and more likely wholly ineffective.  Either way, their viability should be addressed in the proper, non-criminal forum.

### (b).    Reasons for legal invalidity

The same reasons for invalidity outlined above, *supra* § IV.C.1, apply with equal force, as summarized here:

(i).    As alleged, the defendants had more than a good faith basis to believe the computer users at issue used a file-sharing network to attain copyright-protected works, thus giving rise to a valid *prima facie* civil case and making a claim of "fraudulent" civil litigation legally impossible.

(ii).    The existence of a potential defense does not alter this conclusion; civil litigants are fully justified in bringing a civil action despite the possible existence of a full or partial defense.

(iii).    A lawyer's personal stake in civil litigation does nothing to trick a computer user into using a file-sharing network to attain protected works; nor does it prevent a computer user from using civil discovery and/or other civil procedures to learn of the lawyer's interest and try to mount a defense on those grounds.

(iv).    For the same reasons, a lawyer's person stake in civil litigation lacks the Mail/Wire Fraud fundamentals of "fraud" and "materiality."

(v).    *I.S. Joseph* and *Pendergraft* present a categorical bar to this prosecution.

Now on to the remaining components of the government's theory of prosecution, starting with the asserted lawyer's duty of candor.

### 3.    Lawyer's duty of candor to tribunals

The government further bases its Mail/Wire Fraud theory on alleged violations of a claimed duty of candor to courts, by which it appears to invoke ModRPC 3.3, a Rule of Lawyer Professional Conduct that forbids, *e.g.,* (1) making "a false statement of fact or law to a tribunal"; (2) offering "evidence that the lawyer knows to be false"; and/or (3) in *ex parte* proceedings, failing to "inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."  The government suggests that these alleged violations made the civil lawsuits fraudulent and criminal, *not* because a civil-defendant computer user relied upon any such representation, or even knew about them at all.  Rather, the government claims that accused lawyer made false representations to courts that he might gain access to so-called "early discovery" mechanisms of civil courts, such that he could determine the identities of computer users who the government seems to concede actually did (or very likely did)

participate in file-sharing activities that *prima facie* violate the Copyright Act.

### (a).    Legal effect of alleged ModRPC 3.3 violation

As in the prior subsection, the main problem with this aspect of the government's theory is that, even if true, it wouldn't constitute a dispositive defect to an otherwise-valid civil copyright claim.  As an initial matter, different federal courts may have adopted this rule, a modified rule, or no such rule at all.  And even when adopted explicitly, different federal courts interpret and/or enforce such rules in idiosyncratic ways.  Most often, a violation of such rules results in nothing more than public criticism from the bench or judge's pen, *see, e.g.,* 30 MOORE'S FEDERAL PRACTICE—CIVIL § 811.02, such as an expression of "displeasure," *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 875 n.2 (8th Cir. 2005).  A brief search of legal databases turns up all manner of examples, most recently one in which a court found that a government lawyer had violated a ModRPC 3.3 duty of candor to the court by making a material, false representation of fact to the court.  *Level 3 Comms. v. United States*, __ Fed. Cl. __, 2017 WL 1034480 (Fed. Cl. Mar. 16, 2017).  Specifically, a misrepresentation as to a construction project's start and completion dates, such that the court refrained from issuing an injunction and as a result a litigant was improperly and permanently deprived of at least that form of lawful relief.  *Id.*  The sanction imposed there?  A request directed to the violating lawyer's supervisor, asking that the latter consider "an adverse report in [the violating lawyer's] annual performance review."  *Id.* at \*12.  Quite plainly, then, even if a violation of the claimed duty occurred here, it wouldn't pose a dispositive impediment to the viability of a civil copyright action.  Thus, even if true, the allegation wouldn't make the civil action "baseless," let alone fraudulent.

46

**(b).    Reasons for legal invalidity**

For similar reasons as those outlined above, *supra* §§ IV.C.1 & IV.C.2, the allegation of a violation of ModRPC 3.3 or some analogue fails to state a valid Mail/Wire Fraud claim.  Again, in truncated form:

(i).    The existence of a good faith basis to believe the computer users at issue used a file-sharing network to attain copyright-protected works means there was a valid *prima facie* civil case, thus making a claim of "fraudulent" civil litigation legally impossible.

(ii).    The existence of a potential defense does nothing to change the conclusion. And in any event, allegedly sanctionable conduct is not really a defense.  It would be speculative that some court would take the extraordinary step of issuing a dismissal sanction for an alleged duty-of-candor violation.  As shown above, this rarely occurs.

(iii).    A lawyer's duty-of-candor failure does nothing to trick a computer user into using a file-sharing network to attain protected works.  Indeed, the alleged duty-of-candor violation here was aimed at attaining so-called "early discovery" to obtain the names of computer users who apparently engaged in the file-sharing activity.  The computer users would not have relied upon any such duty-of-candor violation, nor even known about it.

(iv).    For the same reasons, a lawyer's alleged duty-of-candor violation in civil litigation lacks the Mail/Wire Fraud fundamentals of "fraud" and "materiality."  And in this context it lacks the fundamental of "property" as well, since the only thing obtained would be access to a civil court's subpoena authority to determine whom to sue.  This is a governmental prerogative and not "property" as defined by the Mail/Wire Fraud statutes.

(v).    As already observed, *I.S. Joseph* and *Pendergraft* present a categorical bar to

47

this prosecution.

### 4.    Settlement communications

Last, the government says the accused lawyers sent what it describes as "extortionate" settlement communications to computer users identified as *prima facie* violators of the Copyright Act.  This seems by far the weakest of all the government's planks in support of its Mail/Wire Fraud theory.  Courts have roundly rejected the government's precise theory, holding "there is nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation" and so such communications utterly fail to support "allegations of extortion and abuse of process."  *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1027 (D. Col. 2014).  All the previously noted reasons for invalidity of the government's prosecution theory thus apply with even greater force to this plank, and there is no need to restate them yet again.

### D.    Recalcitrant civil litigation conduct ≠ Mail/Wire Fraud

The prosecution may protest: What of all the civil court decisions condemning him for what judicial officers have viewed as recalcitrant conduct?  The pronouncements of "fraud on the court"?  The state disciplinary actions?

In truth, this is what the prosecution at hand is really all about.  The concern is not about the well-being of computer users who frequent file-sharing platforms to swap copyright-protected works.  Indeed, as noted earlier, there seems to exist general agreement amongst judicial officers that such conduct is unlawful, that it violates the Copyright Act, and thus gives rise to civil enforcement actions and in some cases even criminal prosecution.  Rather, the government broadly disapproves of the lawyer-entrepreneurial

48

activities described earlier, *i.e.,* forming organizations to pursue civil enforcement of the Copyright Act, monitoring computer file-sharing platforms for that purpose, using civil court discovery mechanisms to identify violators, and so on.  And its ire is directed with singular force toward Mr. Hansmeier—something of a cause célèbre and object of scorn in the news media and blogosphere and elsewhere—whose litigation tactics have already been penalized by civil courts and state licensing officials.  By this prosecution, the government aims to heap yet more punishment on top of all that.

The trouble is, under the criminal-fraud concepts already described at length, such claimed violations do not and cannot support a valid Mail/Wire Fraud prosecution.  Not alleged misuse of the civil judicial system.  Nor alleged violations of lawyer professional ethics rules.  Nor whatever other claimed civil-litigation-rules infraction the government cares to cite.  This will be demonstrated below, but first we need to take a close look at some civil court decisions, the vehicles by which Mr. Hansmeier now finds himself chastised and humbled.

### 1.    Judicial sanctions and lawyer discipline

Probably the most well-known and widely-publicized of judicial missives criticizing Mr. Hansmeier and his associates may be found at *Ingenuity 13, LLC v. Doe*, No. 2:12-CV-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013).  It is cleverly written.  There are *Star Trek* allusions, screenshots from Google Maps, Powerpoint charts, and more.  In keeping with this, the chosen style is best described as playful and somewhat hyperbolic, as illustrated here: "[C]opyright laws original designed to compensate starving artists allow starving attorneys in this electronic-media era to plunder the citizenry."  *Id.* at

49

*1. And here: "It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to the battlestations." *Id.*

Entertaining prose, to be sure. But the trouble with this sort of judicial decision is it tends to muddle legal concepts, invite misunderstanding and incoherence in the law, to say nothing of unforeseen and unintended results. And given how the charging document at issue here parrots a number of phrases used in this and similar judicial opinions, it is apparently the driving force behind the present criminal prosecution, which itself suffers from all of the problems just mentioned.

### (a).   Judicial decisions imposing sanctions

So what was the district court judge in *Ingenuity 13* really getting at? Certainly the judge was worried about considerations shared by a number of other judges in cases of this sort, *i.e.,* that a subpoena returning names of computer users who appear to have downloaded copyright-protected works carried too high a risk of false positives. *Id.* at *3-*4. For example, someone else actually obtained the works via the file-sharing platform, and person whose name was returned by the internet services provider is wholly innocent of the activity. *Id.* This judge apparently felt that a sufficient pre-filing investigation required more than just matching of an internet service provider number with a name. *Id.*

But the false positive problem is not the thrust of this order. Rather, the district court judge plainly was most concerned with what he viewed as a "fraud perpetrated on the court" by the lawyers and litigants appearing before him. *Id.* at *2. This sort of "fraud upon the court" is generally considered a term of art which reaches "only that species of fraud which does, or attempts to, defile the court itself." *E.g., King v. First Am. Investigs.*

50

*Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).   And this is to be distinguished from "fraud on the adverse party."   *Id.*   The core of the district court's grievance, then, was not fraud upon computer users (who, it appears both the *Ingenuity 13* judge and others acknowledge may well have engaged in unlawful conduct legitimately giving rise to a civil cause of action), but rather perceived misuse of the judicial machinery and process to pursue improper litigation tactics.   *Ingenuity 13, LLC*, 2013 WL 1898633, at \*4.   The Ninth Circuit Court of Appeals affirmed on a "fraud on the court" rationale as well.   *Ingenuity 13, LLC v. Doe*, 651 Fed. Appx. 716, 719 (9th Cir. 2016).

A number of other civil court orders examining the civil-litigation conduct of Mr. Hansmeier and others sound this same theme, *i.e.,* (1) noting the false positive problem and/or other irregularities with the civil actions at issue; but (2) reserving the brunt of criticism (and sanctioning the lawyers and litigants) for what they view as "fraud upon the court"-type activities similar to those just described, *i.e.,* making false statements and/or misusing judicial mechanisms to attain the names of computer users who may have unlawfully obtained copyright-protected works from a file-sharing computer platform. *See, e.g., AF Holdings v. Does*, 752 F.3d 990 (D.C. Cir. 2014); *Guava LLC v. Merkel*, No. A13-2064, 2014 WL 3800492 (Minn. App. Aug. 4, 2014); *Lightspeed Media Corp. v. Smith*, No. 3:12-CV-889, 2015 WL 3545253 (S. D. Ill. June 5, 2015).   This is reason why Mr. Hansmeier became a judicial-sanctions debtor to the tune of thousands of dollars.   This is why his law license is under suspension for the next four years.

### (b).    Fraud upon the court

At their core, then, these decisions are all about "fraud upon the court" in the form of perceived falsehoods uttered to courts for the suggested purpose of misusing district court discovery mechanisms and the like.   None say that copyright holder somehow commits a fraud by initiating a civil action and/or sending settlement-offer letter to a computer user who unlawfully obtained copyright protected works via a file-sharing platform.  (Even the *Ingenuity 13* judge conceded this much: "Plaintiffs do have a right to assert their intellectual-property rights, so long as they do it right." *Ingenuity 13*, 2013 WL 1898633, at *1.).  Nor taking such actions against a person who *appears* to have done so, based upon matching an Internet Protocol computer address (commonly known as an IP address) with an associated person's name and address.  In fact, it appears that most courts find that a copyright holder is well within her rights to bring a civil action with nothing more than a match between an IP address and a name obtained via early discovery.  *E.g., Malibu Media, LLC v. Doe*, No. 15-CV-1862, 2015 WL 4271825, at *2 (S.D.N.Y. July 14, 2015) ("[I]n the face of fifty-seven allegations of infringement on Plaintiff's copyrights linked to Defendant's IP address, the Court finds the evidence set forth by Plaintiff to be sufficient to make out a *prima facie* case of copyright infringement.").  This is broadly consistent with analogous criminal case law, in which courts routinely permit highly-intrusive police searches of homes and computers based upon similar matches between IP addresses and associated names.  *See, e.g., United States v. Stults*, 575 F.3d 834, 843-44 (8th Cir. 2009).

52

Though it is difficult to discern from the charging document, it would appear that the government is in general agreement that it can't bring a Mail/Wire Fraud prosecution based upon such acts of "fraud upon the court."  For example, in prior correspondence the government has indicated that it does not view this Court as a victim of the charged offense here.  And in at least one case cited in the indictment (in an order penned by the Article III judge presiding over these very criminal proceedings), the district court determined that certain alleged actions by Mr. Hansmeier and others "did not amount to a fraud on the Court."  *AF Holdings, LLC v. Doe*, Civ. No. 12-1445, 2014 WL 1285757, at *4 (D. Minn. Mar. 31, 2014) (JNE/FLN).

Instead, the tack pursued by the government here seems to be something like this: (1) pluck selected findings and phrases from the "fraud on the court" judicial decisions just described; (2) find potential defenses that any given file-sharing computer user might have asserted in an attempt to defeat a civil copyright infringement claim; (3) mix and blend into a Mail/Wire Fraud theory.

This is not a permissible charging technique.  In a criminal case the accused must be informed—in clear and unambiguous terms—as to the nature of the legal theory of which he is accused.  This is so he may effectively defend against the charge at hand, preclude future prosecutions in violation of the Double Jeopardy Clause, and so on.  *See, e.g., Russell v. United States*, 369 U.S. 749, 763-64 (1962).  Moreover, also as noted earlier, if any essential aspect of a charged legal theory is unconstitutional or otherwise unlawful, it cannot stand.  *See, e.g., Goodner Bros. Aircraft, Inc.,* 966 F.2d at 384.  So the government can't craft a Mail/Wire Fraud theory by amalgamating all manner of alleged "fraud on the

53

court" decisions, potential civil litigation defenses, rules violations, and so on.  Instead, the government must clearly state what its Mail/Wire Fraud theory is.  It has declined to do so here, requiring the Court and defense to uncoil all the many strands mentioned in the charging document, analyzing them one by one as set out earlier.

### 2.    Reasons for legal invalidity as a Mail/Wire Fraud theory

Although the government appears not to actually be saying that the facts underlying the judicial "fraud on the court" decisions amount to Mail/Wire Fraud, in the interest of completeness any such theory would fail under similar reasoning stated above and summarized as follows:

(i).    The existence of a good faith basis to believe the computer users at issue used a file-sharing network to attain copyright-protected works means there was a valid *prima facie* civil case, thus making a claim of "fraudulent" civil litigation legally impossible.

(ii).    The existence of a potential defense does nothing to change the conclusion.  And in any event, allegedly sanctionable "fraud on the court" conduct is not really a defense.

(iii).    A lawyer's alleged "fraud on the court" to improperly gain access to civil early discovery does nothing to trick a computer user into using a file-sharing network to attain protected works; nor does it prevent a computer user from using civil discovery and/or other civil procedures to learn of the lawyer's conduct and try to mount a defense on those grounds.

(iv).    For the same reason, such a theory lacks the Mail/Wire Fraud fundamentals of "fraud" and "materiality."  Moreover, it also lacks the "property" fundamental since the

only thing obtained would be access to a civil court's early discovery authority to determine whom to sue. This is a governmental prerogative and not "property" as defined by the Mail/Wire Fraud statutes.

(v).    As noted throughout this paper, *I.S. Joseph* and *Pendergraft* present a categorical bar to this prosecution.

### E.    Global defects with this prosecution

Beyond the point-by-point recitation of defects, the government's theory of prosecution here is extremely troubling. For the government bases its theory upon widely-employed, traditional, and constitutionally-protected civil litigation activities. And as already noted, the main trouble with this kind of prosecution theory has been identified in the *I.S. Joseph/Pendergraft* line of cases, amongst others—

> [P]rosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecution into federal RICO actions.

*Pendergraft*, 297 F.3d at 1208. Such prosecutions should not be permitted, lest lawyers and litigants find their right to access the civil justice system "severely chilled." *I.S. Joseph*, 751 F.2d at 267. Moreover it is for civil courts—not criminal prosecutors—to decide how claims are to be adjudicated, *e.g.,* whether there exists a dispositive defense or not, whether a lawyer or litigant should be sanctioned or not, what that sanction should be, *et cetera*. Thus, in addition to the earlier analysis, the government's proffered legal theory contains at least three fatal defects viewed from a more global vantage point—

### 1.   Prosecutions for *prima facie* meritorious civil litigation

*I.S. Joseph* and *Pendergraft* bar the government's legal theory.   In pursuing this theory here, the government invites this Court to go far beyond even an *Eisen*-type scenario in which a Mail/Wire Fraud prosecution theory was permitted after the civil plaintiff concocted "fake evidence" and thus never had a colorable *prima facie* cause of action to begin with.   The suggestion is clear that the computer users at issue here *did* (or apparently did) engage in file-sharing activities giving rise to a *prima facie* cause of action for copyright infringement.

No, what the government seems to be saying here is that, even if there exists a colorable *prima facie* civil cause of action, the government is allowed to seek the criminal sanction if there exists some potential defense to the action, or if sanctionable conduct occurs during the course of litigation.   This is a truly an astounding and radical legal theory, seemingly unprecedented.

The problem with such a theory—at least the most glaring problem the undersigned can discern—is that it would give prosecutors ultra-broad powers to bring a criminal action against any civil litigant or lawyer they wish, powers that are subject to wildly inconsistent and arbitrary enforcement.   All that is needed is to spot some potential defense to the civil action.   Or an arguable violation of some professional ethics rule.   Or some potentially-sanctionable conduct.   As this Court well knows, claims such as these are ubiquitous.

Thus, the effect of the government's legal theory is to grant it *carte blanche* authority to prosecute civil litigants or lawyers.   Say, for example, mass-torts class actions become unpopular or untoward in the eyes of any particular prosecutor.   Under the

government's theory here, that prosecutor can bring criminal charges against the involved lawyers or litigants.  Even if the civil litigation is *prima facie* meritorious.  All that would be needed to prosecute is the existence of some arguable defense, ethics rule violation, or sanctionable conduct, or the like.  And once the public sees such criminal prosecutions, actors will avoid the civil justice system.  At best, citizens will be robbed of their constitutional right to civil justice.  At a minimum, the government's theory threatens an inappropriate chill upon civil litigation activities.

Matters would be even worse than that.  The reality is that the national government itself is a frequent litigant appearing before federal civil courts.  According to one recent publication, it is a named party in 20%-25% of all civil cases filed in federal courts.  G. Sisk, LITIGATION WITH THE FEDERAL GOVERNMENT § 1.1 (2016).  There are *Bivens* civil actions against federal officials.  Employment discrimination actions.  Open government actions.  Social and veterans benefit actions.  The list is lengthy.  *See, e.g., id.* Ch. 3.  And of course civil *habeas corpus* actions, as well as actions to remedy unconstitutional or otherwise activities of the Executive and Legislative Branches.  The government's legal theory here threatens all of that.  Prosecutors need only initiate (or merely threaten) an indictment for *prima facie* meritorious yet arguably impeachable civil litigation actions against the government.  The government will say this is alarmist, but experience teaches that where there is power there will be abuse of that power, and that that at least some prosecutors will succumb to temptation and bring civil litigants to heel in this manner.  Just as some prosecutors seek sanctions for what they view as non-meritorious arguments in civil *habeas corpus* proceedings.  *See, e.g.,* R. Mauro, *Chilling Effect of Threat of Sanctions*

57

*on Effective Representation in Capital Cases*, 36 HOFSTRA L. REV. 417 (2007).

This is precisely what the courts in *I.S. Joseph* and *Pendergraft* rightly worried about. This is why this Court must reject the government's proffered theory of prosecution.

### 2.    Individualized constitutional rights

As already noted, in this nation there exists a tradition and right to petition civil courts to settle grievances, whether against one's fellow private citizen or against the some governmental entity. "Decisions of [the Supreme Court] have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (numerous internal citations omitted). *See also* C. Andrews, *A Right of Access to Court under the Petition Clause*, 60 OHIO ST. L.J. 557 (1999). The government's legal theory here—which proposes to criminalize civil litigation that is *prima facie* meritorious—violates core constitutional principles.

### 3.    Constitutional separation of powers

Last, by its legal theory here, Executive Branch officials propose to encroach upon the sole province of the Judicial Branch. It is civil judges, not prosecutors, who decide whether a civil defense should defeat a civil action. It is civil judges, not prosecutors, who decide whether civil-litigation conduct merits a sanction or not, and if so, what that sanction should be. By its theory here, the Executive Branch seeks to wrest these powers away from civil judges. Civil actions will be filed. Criminal actions will be filed in response. Then there will be stays of the civil litigation, before arguable defenses and/or sanctionable

58

conduct can be adjudicated there.   Then the Executive Branch officials will put the decision on these matters before a criminal jury, rather than before the presiding civil judge where it belongs.   The Executive Branch cannot do such things while remaining true to the constitutional imperative that each coordinate branch exercise only those powers and those roles to which it is assigned.   The government's prosecution theory runs afoul of constitutional separation of powers principles, and fails under this doctrine as well.

### V. Conclusion

At the beginning of this paper, the defense noted that this prosecution is peculiar. As this discussion shows, it is that and much more troublesome besides. It is invalid under legal principles and case law. It impinges upon constitutional rights. It encroaches upon exclusive judicial powers. In short, this prosecution is not just peculiar, but it is contrary to law, and presents a clear danger to this nation's system of civil justice. The fraud and money laundering prosecutions should not be permitted to go forward. These charges must be dismissed.

Dated: April 24, 2017                           Respectfully submitted,

*s/ Andrew H. Mohring*

ANDREW H. MOHRING
Attorney ID No. 190731

MANNY K. ATWAL
Attorney ID No. 282029

Office of the Federal Public Defender
District of Minnesota
U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858