UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Paul R. Hansmeier, )<br>)<br>Defendant. ) | Crim. No. 16-334 (JNE/KMM) |

**DEFENDANT'S REPLY CONCERNING PRETRIAL MOTIONS:**
Dispositive Motion

### I. Introduction

Context is important and relevant. This is especially true here, where the prosecution's allegations test the generally recognized flexibility and expansiveness of the fraud statutes. Here, the context is the arena of civil litigation, and the prosecution's attempt to selectively criminalize it. The case at hand is all about lawyers acting within the "civil justice system." As discussed at length elsewhere, (*e.g.,* ECF 49 at 6-8), the traditional and correct view is that such civil litigation activities are: (1) essential to a well-functioning and peaceful civil society; and (2) a crucial citizen's check on the power of government at all levels. For these and many other reasons, courts have long looked askance at *any* attempts—especially by the Executive Branch but on the part of anyone—to suppress or chill civil litigation activities.

The government's charging document endeavors to charge a violation of federal criminal Mail/Wire Fraud and related conspiracy statutes on the ground of the initiation of

1

alleged "specious" civil actions. (ECF 1 at 1). The defense thus filed a suite of pretrial motions, (ECF 47-54), attempting to clarify what the government's theory of the case really is, including seeking more specificity about the identities of the claimed victims and the nature of their victimization. The government's response, (ECF 57), makes it clear that the theory of prosecution is every bit as novel and dangerous as originally feared.

Make no mistake, the government's prosecution theory elevates the significance of this case as precedent. Whatever decision the Court reaches will generate ripple effects reaching well beyond the perimeter of the case itself. Just how far can the government go toward criminalizing civil litigation activities? Who gets to decide whether or not a given civil action is "baseless" or "frivolous" or "specious" or "sham"? Who gets to decide what type and magnitude of penalty is appropriate, if any? Traditionally, the answer has been clear—the matter is the sole province of civil courts, with attorney conduct being separately evaluated and disciplined as appropriate by the jurisdictions' professional regulatory entities. Each of these has been involved, extensively, in the developments that preceded this indictment. By its prosecution here, the Executive Branch seeks to wrest and arrogate that authority unto itself. This is a radical notion, particularly given that the national government is itself so often a party to civil litigation, and in any event is staffed by officials who might disapprove of litigation activities or legal theories that civil courts countenance. The defense recognizes that it has already filed a lengthy paper on all these topics, (ECF 49), and there is no need to repeat all those points here. Rather, the body of this Reply will be in abbreviated form, in the manner of selective rebuttal as to the government's most troubling theses.

## II. Discussion in Reply

**A. Motion to dismiss**

**1. The government's fatal concession: non-frivolous civil litigation**

In its charging document the government claims Mr. Hansmeier is criminally liable for "specious" civil litigation, (ECF 1 at 1), and now follows that by asserting the civil litigation at issue was "dubious," "frivolous," and more. (ECF 57 at 5). The trouble is, later on in the same document the government concedes that these characterizations are inaccurate. Here is what the government says about the matter:

The government recognizes that its claim of "frivolous" civil litigation is based upon the alleged uploading by the copyright holder of protected works to a computer file-sharing website. (ECF 57 at 14-21). The government appears to be saying this gives rise to an ironclad and dispositive defense to a *prima facie* copyright infringement claim. (*Id.*)

To support its thesis, the government relies on "simple common sense and the great weight of implied license cases." (ECF 57 at 18). As the quoted phrase suggests, here the government is conceding the existence of cases, such as those cited in the defense's main brief in which courts have upheld claims and rejected defenses in copyright infringement actions based on nothing more than the copyright holder's alleged uploading of protected works to a computer file-sharing platform. (ECF 49 at 38-40). The government says these are "outlier cases" and that other courts have "acknowledged the viability of defense such as implied license, waiver, unclean hands, and abandonment where a plaintiff is alleged to have seeded their copyrighted works." (ECF 57 at 19-20). Several critical aspects of this discussion leap out.

*First,* in admitting that jurists disagree about whether defensive doctrines such as implied license rise to so much as legally-viable defenses to the civil copyright infringement actions at issue, the government acknowledges that civil lawsuits at issue here were not "frivolous" or "specious" or "dubious". A legal position cannot be "frivolous" if courts disagree as to its resolution. *See, e.g.,* SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 11 (Lexis 2016) (civil litigation legal theory is not "frivolous" if the position is "fairly debatable," and particularly if the "presenter's position has been judicially endorse in other cases—even in dissent"). Thus, the government contradicts itself by claiming "frivolous" civil litigation owing to the existence of a possible defense, while simultaneously admitting judicial disagreement as to whether that very defense is even legally viable.

*Second*, even if it were a clear and unanimous legal rule that a copyright holder's upload of protected works gives rise to one or more affirmative defenses for the downloader, at most these defenses would be of uncertain efficacy and dependent upon numerous fact-specific circumstances. As both criminal and civil courts well know, most often a defense does not definitively dispose of a matter, but rather gives the defendant more lines of argument for presentation to the decision-maker. And the decision-maker can reject a proffered defense for fact-specific reasons. For example, a computer user's attempted defense may fail because he copies a protected digital file to his machine rather than viewing it just once via streaming. Or a computer user distributes the protected work far and wide, as opposed to mere personal use. The point is that innumerable fact-specific scenarios might bolster or defeat the affirmative defense.

Indeed, the literature of copyright law provides that "[a]s with any affirmative defense, the party asserting an implied license bears the burden of proving the license's existence and that the license, if any, covers the use in question." 2 PATRY ON COPYRIGHT § 5:131 (Westlaw 2017). Such matters are "far from clear cut" and often involve amorphous "equitable doctrines," such that the civil litigation cannot be deemed baseless or frivolous. *E.g., Wolfchild v. Redwood County*, 824 F.3d 761, 771 (8th Cir. 2016). The takeaway point: Even assuming the existence of an "implied license" defense, at most such a defense is of uncertain efficacy, and thus a copyright holder's action in bringing a civil case is not baseless, regardless of the theoretical and as-yet unasserted defense.

*Third,* in asking the Court to countenance this contradiction—claiming "frivolous" civil litigation while simultaneously admitting the opposite—the government is asking the Court to buy into numerous subsidiary contradictions too, including:

- As demonstrated, access to the "civil justice" system is constitutionally protected, so long as the civil litigation at issue is not "objectively baseless." (ECF 49 at 1-2, 6-8). The government responds by mocking the defense for claiming a "constitutionally-protected right to engage in frivolous litigation." (ECF 57 at 5). But as just demonstrated, the government's own presentation shows that the litigation at issue was *not* "frivolous," nor "objectively baseless". A contradiction.

- The Court of Appeals' decision in *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), broadly and categorically forbids use of criminal statutes to attack what is claimed to be "frivolous" or "baseless" civil litigation. (ECF 49 at 31-32). The government responds that the case is limited to "extortion" cases. (ECF 57 at 11). It is not. But even if the decision were so limited, the government explicitly makes "extortion" a key facet of its prosecution theory, using variants of the term multiple times in the charging document, (ECF 1 at 1, 8, 17), and in its Response as well, (ECF 57 at 15, 17). Another contradiction.

- The government claims the accused lawyers "never intended to litigate their copyright infringement claims" because they often voluntarily dismissed claims upon meeting resistance. (ECF 57 at 14). But as the government's own allegations

5

make clear, they *did* litigate the claims. Just because a matter ends in a settlement agreement or voluntary dismissal rather than a jury verdict or summary judgment doesn't mean the matter wasn't litigated; just as a criminal matter that ends in pretrial dismissal or a plea agreement doesn't mean there was never a prosecution. Another contradiction.

- The government claims the accused lawyers should have revealed unspecified information—presumably the alleged fact of the copyright holder uploading protected works—to computer users/civil defendants. (ECF 57 at 17). It says that had they done so, "many [computer users] would not have settled with him." Laying aside the slippery and speculative nature of this assertion, the government ignores that a civil plaintiff needn't plead facts in response to a yet-to-be raised affirmative defense, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009), nor supply discovery on such a matter absent a statutory duty to disclose and/or discovery request, FRCivP 26-37, neither of which are claimed here. Moreover, the government's own charging document makes clear that some defendants *did* elect to make use of civil litigation to discover the uploading activities, and press a case for sanctions in civil courts. (*E.g.,* ECF 1 at 19-25). Yet another contradiction.

*Last*, the government ignores the more global implications of its propounded theory of prosecution, raised earlier. (ECF 49 at 55-59). What is the limiting principle here? If the government can bring a criminal charge based upon what it admits to be non-frivolous litigation (the government doesn't say this directly of course, but that is the natural conclusion when one applies the government's concessions to the applicable legal standard as discussed above), then what is to stop prosecutors from criminalizing *any* civil litigation of which it disapproves? To take an available example, just this week a civil lawsuit was filed against the sitting President of the United States, seeking injunctive relief for an alleged violation of the so-called Emoluments Clause of the United States Constitution. *District of Columbia v. Trump*, Civ. No. 8:17-1596 (D. Md.). This came on the heels of a similar civil action brought against the President, *Citizens for Responsibility v. Trump*, Civ. No. 1:17-458 (S.D.N.Y.), to which the DOJ-Civil Division has sought to defend using a

6

number of defenses such as lack of jurisdiction and standing. *Id.,* Document #35 (June 9, 2017). The question becomes, if the government's theory of prosecution in the present case is viable, what is to stop the DOJ-Criminal Division from bypassing the civil process entirely and just bring criminal charges against these civil plaintiffs and their lawyers? As in the case at hand, the government could merely say there exist a number of undisclosed defenses to the asserted civil claims, and thus the civil litigation activities amount to fraud or extortion or some other creatively-chosen criminal statute. That approach has many advantages over making arguments in civil courts: the civil-plaintiffs-turned-criminal-defendants would suddenly be at a great tactical disadvantage; and the prospect of criminal prosecution and imprisonment would chill many from challenging the government through the civil courts. And this is but one example that comes short of capturing the enormity of the problem, as the government could seek to criminalize and prosecute any form of civil litigation it doesn't like for one reason or another; all that is needed to do so if posit a defense and convene the grand jury. So again the question must be asked, is this not the natural and foreseeable terminus of the government's thesis?

      The truth is that courts have long recognized this precise danger, which is why they have chafed at the notion that the government can bring a criminal charge based on nothing more than acts fully intrinsic to civil litigation. This is the point of the Eighth Circuit Court of Appeals opinion in *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) mentioned earlier, notwithstanding the government's unconvincing attempt to distinguish it. As discussed elsewhere, (ECF 49 at 32-33), the Eleventh Circuit's opinion in *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) only bolsters the conclusion. In turn

the government tries to rely on *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), but the defense already said the outcome of that case is explained by the concoction of "fake evidence" entirely external to the subject litigation, not alleged acts that are entirely internal to the civil litigation in the manner of a malicious prosecution civil claim. (ECF 49 at 34-35). As for the government's other cited case, *United States v. Lee*, 427 F.3d 881, 890 (2005), there the fraudulent "mailings at issue were not mailings to the court" and indeed at the time of the mailings there existed no civil "suit at all." Rather, the mailings were an attempt to trick the recipients into foregoing civil action. Again, both *Eisen* and *Lee* involve acts external to the subject civil litigation, not internal to the civil litigation such as is alleged here. The bottom line is that both *I.S. Joseph* and *Pendergraft* recognize the dangerous game the government is playing here. And both serve to foreclose this prosecution. This is to the good. Otherwise this nation's civil justice process would be compromised by selective criminalization, at the whim of prosecutors.

### 2.   The retreat position: recalcitrant civil litigation conduct

Perhaps because of the problems highlighted here and in the opening briefing on this motion, the prosecution retreats to the more comfortable ground of pointing out all the civil court decisions chastising Mr. Hansmeier, for what was viewed, as recalcitrant and/or dishonest conduct in order to make use the court's "early discovery" authority. The government says the defense never addressed this, which is not accurate as the matter was discussed at some length in the defense's main paper. (ECF 49 at 48-55).

To be clear, a number of civil judicial officers have accused Mr. Hansmeier of being dishonest and improperly making use of the courts' discovery authority in order to match

8

IP addresses with names, so-as-to gather evidence to bring the above-referenced civil lawsuits. This is why his attorney license is under suspension. It is why he is a civil-sanctions debtor to the tune of thousands of dollars. To the extent his civil litigation activities were recalcitrant, and to the extent he misused judicial discovery powers, he has been severely punished. To this day, he continues to feel the sting.

The decisions reached in the civil cases themselves, and the actions against Mr. Hansmeier in attorney disciplinary proceedings are clear indications that the proper forums to address concerns with the litigation in which he participated are functioning as they are intended to. Far from supporting the legitimacy of the prosecution's charges, these facts show that the indictment's effort to stretch the law to criminalize Mr. Hansmeier's alleged conduct is both excessive and, fundamentally, unnecessary.

Moreover, even assuming the government is correct that he misused the judicial process in this way, this simply cannot serve as the basis for the present criminal action. This is so for numerous reasons discussed previously, but here is a summary:

- The alleged conduct was entirely internal to the subject civil litigation, and thus a criminal charge based upon said conduct (aside from traditional litigation-internal offenses like perjury) is categorically prohibited by *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) and its progeny.

- The alleged conduct merely gave the accused lawyers access to the courts' discovery powers, and did not directly or indirectly fool computer users frequenting file-sharing sites into downloading the copyright protected materials nor in paying settlements for doing so. Thus, the alleged conduct fails to exhibit criminal fraud fundamentals of (1) ***fraud*** (*i.e.,* a trick that directly prompts the alleged victim to part with his property); (2) ***materiality*** (*i.e.,* a falsehood that goes to the core of what the alleged victim understands the terms of the transaction to be and thus directly affects her decision-making thereto); and (3) ***property*** (*i.e.,* deprivation of a legally-recognized property interest; not a governmental prerogative, nor some claimed ethereal right to accurate information or the like). (ECF 49 at 30). Tellingly, the

9

government addresses none of these modern limiting principles to cabin use of the Mail/Wire Fraud statutes, but rather relies on vague texts from the 1970s and 1980s. (ECF 57 at 6).

- The allegations that the accused engaged in such conduct may subject him to civil court sanction and professional discipline (which indeed occurred here), but they do not change the reality that the computer users at issue apparently unlawfully downloaded copyright protected works giving rise to a civil action.  That is to say: (1) Mr. Hansmeier was still entitled to bring his civil actions; (2) the computer users were entitled to mount a defense if they wished; and (3) of course, the civil courts were entitled to impose sanctions for abuse of judicial procedures, regardless of the substantive merits of the civil claim or defenses thereto.

The bottom line is that by the government's own admission, Mr. Hansmeier was raising valid and non-frivolous civil claims.  That core fact forecloses the government's prosecution for Mail/Wire Fraud and related counts.  Any recalcitrance or dishonesty with the courts in gaining access to discovery mechanisms may and did subject him to civil court-imposed sanctions, and professional discipline.  But not the Mail/Wire Fraud and related offenses at issue here.

Dated: June 16, 2017                      Respectfully submitted,

*s/ Andrew H. Mohring*

ANDREW H. MOHRING
Attorney ID No. 190731

MANNY K. ATWAL
Attorney ID No. 282029

Office of the Federal Public Defender
District of Minnesota
U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858