UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 16-334 (JNE/KMM)

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **DEFENDANT'S OBJECTIONS TO** |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Paul R. Hansmeier, | ) |
| | ) |
| Defendant. | ) |

**I. Introduction**

Defendant Paul Hansmeier submits these objections to the Magistrate Judge's Report and Recommendation ("RR"), (ECF 66), which recommends that the Court deny his Motion to Dismiss, (ECF 48-49). The Magistrate Judge gave the matter plenty of thought, as evidenced by the Pretrial Motions Hearing Transcript, (ECF 65 ("MHT")), as well as the RR itself, (ECF 66). The RR focuses solely upon the case law indicating a categorical bar to criminal fraud prosecutions for civil-litigation-internal conduct, (RR 7-10), and the factual allegation of "false statements and material omissions," (RR 10-12). The RR thus fails to consider the more salient reasons for pretrial dismissal, *i.e.,* the government's stated *prima facie* legal theory, on its face, fails a number of fundamental tests for what constitutes a legally cognizable charge under the federal criminal fraud regime. (ECF 49 at 28-31). Properly framed this way, it becomes plain to see that the counts within the scope of the motion (1-17) must be dismissed.

1

## II. Background[1]

In this case the government alleges Mail/Wire Fraud, along with off-shooting counts of conspiracy.[2] The counts are based upon Mr. Hansmeier's alleged activities with respect to civil copyright (or related) litigation.

The charging document splashes a bevy of factual claims across many pages, (ECF 1), most of which are unquestionably lawful and even constitutionally protected (*e.g.*, making "pornographic" movies). (*E.g.,* RR 2-4; MHT 41-43). Alleged falsehoods and/or material omissions don't enter the picture until the government's narrative turns to Mr. Hansmeier's activities with respect to civil courts (*e.g.*, failing to supply all relevant information when seeking "early discovery"). (RR 3-4). The lengthy charging document jumbles all manner of factual allegations—most lawful, some allegedly not—making it troublesome to pinpoint exactly alleged acts are supposed to constitute fraud and which are mere "hyperbole" or "inflammatory," as the Magistrate Judge aptly put it, (MHT 21).

This is why the defense was compelled to file a wide-ranging memorandum in support of pretrial dismissal, (ECF 49), as well as a motion seeking clarification by way of bill of particulars, (ECF 50), finally landing on this synopsis of the Mail/Wire Fraud theory:

---

[1] For its *de novo* review of the RR, the relevant filings include: the charging document, (ECF 1); defendant's motion to dismiss and supporting memorandum, (ECF 48-49); defendant's motion for bill of particulars, (ECF 50); government's response, (ECF 57); defendant's reply, (ECF 59); pretrial motions hearing transcript ("MHT"), (ECF 65); and of course the RR itself, (ECF 66).

[2] The defense supplied authorities showing that if the objective of an alleged conspiracy fails as a matter of law, then so does the overlaying conspiracy charge. (ECF 49 at 4-5). Neither the government nor the RR dispute this analysis. (ECF 49 at 4-5).

   (a). The defendant lawyers and others "uploaded the [protected works] to file sharing websites hoping to lure people into downloading" those same protected works;

   (b). The defendant lawyers owned and/or controlled the statutory exclusive rights in protected works rather than the named plaintiff business organizations, thus giving the defendant lawyers a personal stake in the outcome of the litigation;

   (c). The defendant lawyers were derelict in their professional ethics obligations, including a duty of candor to federal civil courts when invoking court-overseen discovery procedures to identify computer users who had downloaded the protected works at issue; and

   (d). The defendant lawyers employed "extortionate tactics to garner quick settlements" from such identified computer users, who were "unaware of the defendants' role in uploading the [protected works at issue], and often were either too embarrassed or could not afford to defend themselves."

(ECF 49 at 27).

At the pretrial motions hearing, the Magistrate Judge pruned the government's legal theory down further still. No longer can the government rely upon wholly lawful and constitutionally protected activities as in subpart (a) above, *e.g.,* filming of pornographic films, protecting them via the federal Copyright Act, and uploading them to file-sharing websites. (MHT 41-45, 49-50). Nor the formation of business entities to hold those Copyright Act rights, in the manner of subpart (b). (MHT 43-44). Nor the (demonstrably false) idea that a copyright holder's act of uploading protected works to file-sharing platforms somehow invalidated any civil copyright cause of action *ab initio*, as in in subpart (d). (MHT 25, 41-43, 49-50, 60-61).[3]

---

[3] The RR does mention these alleged activities as part of its reasoning, but explains that the alleged actions merely "support[] the [claimed] fraudulent scheme" in the sense of "evidencing an intent to defraud." (RR 11-12).

Having thus stripped away the government's superfluous commentary, the Magistrate Judge demonstrated that all the action lies with subpart (c) above, *i.e.,*

> The alleged scheme involved uploading pornographic movies to file-sharing websites, obtaining the IP addresses of individuals who downloaded those movies, *improperly using civil litigation proceedings to discover the identities of the individuals*, and then seeking settlement payments in exchange for not naming them as defendants in a copyright infringement lawsuit.

(RR 2). The government's commentary put the issue in even sharper relief: "[W]hat [the defendants] were trying to do was **_misuse the early discovery in order to get the settlement fees_**." (MHT 53 (emphasis added); *accord, e.g.,* MHT 42, 44, 45-46, 50-53).

Hence, the applicable question boils down to whether "misuse of early discovery" for the purpose of procuring "settlement fees" states a valid *prima facie* theory of criminal fraud under the federal regime. The Magistrate Judge ultimately concluded that it does, (RR 13), but in doing so failed to consider essential aspects concerning what constitutes a legally valid theory of criminal fraud, (ECF 49 at 28-31). As the remaining discussion will show, the main point of these Objections is to remedy that flaw.

### III. Objections

**A.    The *prima facie* theory of criminal fraud & FRCrP 12 standard**

The RR states that a FRCrP 12 motion to dismiss ought not be used to "critique the strength of the government's theory of the case." (RR 5). In saying so, the Magistrate Judge is merely pointing out that a court's task is to read the charging document's salient factual allegations, assume them to be true, and see whether the result amounts to a *prima facie* violation of the charged criminal statute. (RR 5, 13).

That being said, the government urges that charging document can withstand scrutiny merely by "track[ing] the statutory language," (ECF 57 at 8), and may quote the RR's language to argue something similar here. In truth, the rule is:

> [W]here an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts not merely in the general words of the statute, but with such *reasonable particularity* as will apprise the defendant, with *reasonable certainty*, of the nature of the accusation and as will enable the court to say that the facts stated are sufficient in law to support a conviction.

*United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) (emphases added).

The reason for this "particularity" requirement is to preclude amorphous fraud theories that (as seen in this case) are near-impossible to discern, much less defend. Thus, it is "incumbent upon the pleader to describe the scheme or artifice to defraud" with "such certainty as would clearly inform the defendants of the nature" of the alleged scheme. *Id.* (citation and punctuation omitted). If the facts as alleged do not meet this "particularity" or "certainty" test, then pleadings-stage dismissal is the necessary result. *E.g., id.* at 1109-17; *accord, e.g., United States v. Yefsky*, 994 F.2d 885, 893-94 (1st Cir. 1993).

**B.     The alleged facts fail to state a legally cognizable criminal fraud charge**

So the question for this Court becomes: Does the particularized allegation of "misuse [of] early discovery in order to get [] settlement fees" constitute a legally cognizable theory of Mail/Wire Fraud? To get the answer, courts typically examine the essential elements of the charged offense, and then see whether the salient alleged facts are capable of meeting those same elements. *See, e.g., Steffen*, 687 F.3d at 1109, 1113-17.

The essential elements contained in Mail/Wire Fraud of interest here include: (i)

5

intent to defraud; and (ii) a scheme to defraud. *E.g., United States v. Rice*, 699 F.3d 1043, 1047 (8th Cir. 2012). Threading both of these, there exists a principle known as "materiality." *Neder v. United States*, 527 U.S. 1, 20-25 (1999). That is to say, materiality requires "some degree of planning by the perpetrator" to make "fraudulent misrepresentations or omissions <u>reasonably calculated</u> [*i.e.,* intent element] to <u>deceive persons of ordinary prudence and comprehension</u> [*i.e.,* scheme element]." *United States v. Goodman,* 984 F.2d 235, 237 (8th Cir. 1993) (punctuation omitted and emphases added); *accord, e.g., United States v. Bryant*, 606 F.3d 912, 918 (8th Cir. 2010) (noting that a "misrepresentation is material if it is <u>capable of influencing</u> [*i.e.,* scheme element] the <u>intended victim</u> [*i.e.,* intent element]") (citations omitted and emphases added).

As for the salient alleged facts, as already mentioned the government's *prima facie* fraud theory is that Mr. Hansmeier and others would make false statements to civil courts in order to make use of discovery mechanisms for the purpose of identifying downloaders of copyright-protected works. The government alleges two separate categories of civil actions: (1) Copyright Act lawsuits; and (2) "hacking" lawsuits, discussed in turn

   1.   **Copyright Act lawsuits**

The first and most prominent category of alleged civil discovery "misuse" involves Copyright Act actions brought in federal courts. The government concedes that the complainants in this case did (or apparently did) download the protected works at issue. (*E.g.,* MHT 41 ("I mean, the thrust of our indictment here is that their goal was to get money from these victims or these people <u>that had downloaded their movies or potentially downloaded their movies</u>.")). And though the government continually expresses its outrage

6

about the allegation of defendants uploaded the protected works to the file sharing platform in the first place, (*e.g.,* ECF 57), the reality is that such activity is recognized as a permissible civil investigatory technique, (ECF 49 at 37-40). At most, such uploading by the copyright holder constitutes an uncertain defense in the hands of a civil defendant, (ECF 49 at 37-40), and the Magistrate Judge correctly recognizes that failure to disclose such defenses doesn't amount to fraud by itself, (*e.g.,* MHT 25).

So with respect to the Copyright Act category of lawsuits, the government's fraud theory is cabined to the allegation of lying to civil courts in order to access the discovery tools needed to match names to IP addresses. But this theory of fraud fails the essential "materiality" test discussed previously, *i.e.,* "fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension," *Goodman,* 984 F.2d at 237, or "capable of influencing the intended victim." *Bryant*, 606 F.3d at 918. Instead, the government's articulated *prima facie* theory parallels cases in which courts have rejected criminal fraud charges for lack of essential fraudulent intent, proximate causation, or the like. *E.g., United States v. Jain,* 93 F.3d 436, 441-42 (8th Cir. 1996) (alleged scheme involving undisclosed referral payments legally invalid, where patients expected to receive high-quality services at a set price and that's precisely what was provided). All fit squarely within the "materiality" principle:

> *Non-influential falsehoods to a third party:* Courts have rejected criminal fraud theories based upon deceit to a third party, and having no substantive influence on the other party's decision-making. *United States v. Starr*, 816 F.2d 94, 95-101 (2d Cir. 1987) (private bulk mail company deceived postal service into charging lower rates for delivery, but this deception to a third party had no discernable bearing on the customers' decision to contract with private company).

*Uncertain legal duty + known conflict of interest:* Courts have rejected theories of fraud when the claimed legal duty to disclose is ambiguous and subject to debate amongst jurists, and the other party was fully aware of the conflict of interest as well as the need to commission an independent analysis. *E.g., United States v. Weimart*, 819 F.3d 351, 369-70 (7th Cir. 2016) (corporate officer negotiating three sided deal with employer in which conflict was fully disclosed, and officer's only misleading comments involved negotiating position subject to doubtful fiduciary duty).

*Falsehoods that merely introduce the transaction:* Courts have rejected theories in which a deception merely introduced the proposed transaction and the other party ultimately got exactly what was bargained for. *E.g., United States v. Takhalov*, 827 F.3d 1307, 1310-19 (11th Cir. 2016) (night club owners hired young women to pose as tourists and ask visiting businessmen to purchase food and drink at clubs, but the deception merely introduced the transaction and businessman got to socialize with young women, precisely the result they had sought).

With respect to the case at hand, all these principles preclude the government's articulated theory of criminal fraud:

*(a). Non-influential falsehoods to a third party:* [4] Here, as already mentioned, it is claimed that Mr. Hansmeier and others told numerous lies to courts in order to misuse early discovery mechanisms, all to identify likely downloaders of copyright protected works. If true, that lie did nothing more than yield the names and addresses of likely downloaders, permitting the dispatch of settlement-offer letters. Let's assume the recipient opens the letter, and recognizes straight away that he did in fact download the work that he is accused of downloading. Now he has many options, including researching the law on his own for possible defenses, consulting a lawyer, or skipping all that and just paying the amount

---

[4] The RR characterizes the defense argument to include a claim that "a lie or material omission to one party that induces another party to part with her money or property cannot constitute fraud." (RR 12). This is a misapprehension of the defense thesis; rather, as shown here, the idea is that a falsehood to a third party that *does not influence* the complainant to part with money cannot constitute criminal fraud.

requested. In that scenario, the letter recipient has no idea how the sender got his name and address, nor does he care when writing the settlement check. All he knows is that he did what he is accused of having done, and thinks it best to pay the fee rather than risking the possibility of litigation.[5] In short, the claimed falsehood to the court did not influence his decision to pay the proposed settlement amount. A non-material falsehood.

   *(b). Uncertain legal duty + known conflicting interest:* Alternatively, the recipient might deny the downloading activity. Or he might acknowledge downloading, and yet wish to test the strength of the sender's case in civil court, assert a defense, probe the manner in which the copyright investigation was handled, or take some other defensive tack entirely. At all events, the Magistrate Judge has acknowledged that there is no duty to "flag a possible defense" to a settlement-letter recipient, (MHT 25), so the government cannot sustain a fraud theory on the ground that the settlement letter should have revealed the recipient's name and address were identified by "misuse" of civil discovery. Moreover, the recipient of such a letter knows full well that he is an adversarial posture with the sender, and thus can consult his own lawyer or otherwise take whatever defensive action is appropriate. Here again, the lack of a legal duty to disclose combined with the transparent conflict of interest means the claimed falsehood to the civil courts (a third party) is not

---

[5] Both the government and RR suggest that it matters that the civil plaintiffs supposedly never intended to follow through with ongoing stages of civil litigation, presumably to include formal discovery, pretrial practice, and so on. But it is commonplace for potential litigants to resolve the matter short of full-on civil litigation via pre-litigation settlement negotiations. And it is also common for a potential litigant to bluff, making a settlement offer even though he might lack the resources and/or will to engage in such litigation. In short, it makes no difference to the analysis whether or not the civil plaintiffs here intended to pursue the civil litigation beyond a certain stage.

material to the settlement letter recipient.

*(c). Falsehoods that merely introduce the transaction:* Moreover, in either of the above scenarios, the alleged falsehoods to courts merely served to introduce the proposed transaction. That is to say, the alleged falsehoods to a third party merely provided the means by which the sender could address the settlement letter to the recipient. As just explained, once a recipient reads the settlement-offer letter he is in complete control of what to do next, and his decision isn't influenced by any falsehood to a court. Not least because he doesn't even know about any falsehood to the court (though he could, at is option, discover such matters via the civil litigation process). The recipient can choose to negotiate, litigate, pay the requested amount, or something else entirely. Any falsehood to courts or misuse of civil discovery mechanisms does not enter into the recipient's calculus one way or the other. Once again, materiality is lacking.

In sum, then, with respect to the Copyright Act lawsuits the government's fraud theory fails the materiality test, and thus lacks the essential elements of (i) intent to defraud and (ii) scheme to defraud. The remaining question is whether the so-called "hacking" lawsuits meet the test, the topic up for discussion next.

### 2. "Hacking" lawsuits

The second category of alleged civil discovery misuse involves so-called "hacking" lawsuits, whereby it is claimed that Mr. Hansmeier and others "falsely alleged that their client's computer systems had been hacked" by persons associated with IP addresses, *i.e.,* unlawfully gaining access to a restricted computer system by means of ill-gotten passwords. (ECF 1 at ¶ 29). So unlike the Copyright Act lawsuits, if the government's

allegations are true then these lawsuits would not have a sound basis in fact—a point upon which the Magistrate Judge heavily relies. (RR 3-4, 8, 10-11).

But here again, the Magistrate Judge failed to look at the materiality angle. For the government's theory is not that the allegedly false "hacking" lawsuits convinced settlement letter recipients to write checks. Rather, the government is saying the aim of the hacking lawsuits was to misuse civil discovery mechanisms to identify copyright-work downloaders, precisely as with the Copyright Act lawsuits described in the prior section:

> [T]he IP Addresses listed in the [hacking lawsuit] complaints and motions for early discovery were IP Addresses that defendants had caught downloading their or their clients' pornographic movies through file-sharing websites on earlier occasions.

(ECF 1 at 16-17; *accord, e.g.,* RR 3-4 (Magistrate Judge acknowledging same)). The objective was not to trick downloaders into thinking they were vulnerable to a "hacking" cause of action. Rather, just as before, the endgame was to match IP addresses associated with copyright-infringing downloads with names and addresses, so that settlement-offer letters could be sent. (*E.g.,* ECF 1 at 17).

Accordingly, the hacking category suffers from the same defects as before—

***(a). Non-influential falsehoods to a third party:*** As with the Copyright Act lawsuits, the recipient of a settlement offer letter knows nothing about the alleged falsehoods to courts. All he knows is that he downloaded the works claimed in the letter, and elects to pay the requested settlement amount rather than hire a lawyer or litigate *pro se*. The alleged falsehood simply does not influence the downloader in that decision.

***(b). Uncertain legal duty + known conflicting interest:*** Neither the government nor the RR identifies any source of legal duty to inform settlement letter recipients of the means by which they were identified, nor flag any defense. In any event, the recipient is fully aware of the adversarial posture. And thus, he is fully aware of the need to independently investigate if he wishes to respond, *e.g.,* by hiring a lawyer or litigating the matter *pro se*.

***(c). Falsehoods that merely introduce the transaction:*** Moreover, once again the alleged falsehood to courts merely gives the sender the means by which to match names with IP addresses, such that sender knows who should receive the letter. In this way, at most the alleged falsehood merely introduces the transaction. And does not influence it.

One illustrative case is worth mentioning before moving on. In *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002), prosecutors brought a mail fraud charge on the ground that defendants submitted false affidavits as civil court pleadings, in order to "extort a monetary settlement" from the other party. *Id.* at 1208. The Eleventh Circuit Court of Appeals held this did not state a legally valid theory of mail fraud, as the complainants would have known full well the affidavits were false, and the writer of the false affidavit would have been fully aware that complainants would immediately spot the falsity. *Id.* at 1209. Thus, no materiality. No scheme. No intent to defraud. *Id.*

The point is this: As explained above, by the government's allegations the settlement-letter recipients did not know about the hacking allegations, nor were influenced by them in writing or refusing to write settlement checks. But even if they had been aware of the allegedly false hacking claims, they would have been fully aware that the allegations were false and thus not fooled in the slightest.

12

For its *de novo* review, the Court might note that that RR is silent on these matters, (RR *passim*), despite a discussion of these concepts in the defense's opening memorandum, (ECF 49 at 28-31, 45-48). In addition, the RR fails to acknowledge the constitutional challenge mounted in the defense brief, (ECF 49 at 6-8, 56-59), a point that will be touched upon next.

### C. Prosecution for bringing meritorious civil litigation is unconstitutional

As already mentioned, the government concedes the settlement-offer letter recipients did (or apparently did) unlawfully download the copyright protected works at issue, (*e.g.,* MHT 41), thus giving rise to a *prima facie* civil cause of action, (*e.g.,* ECF 49 at 15-23). Under numerous provisions of the United States Constitution there exists a legal right to access civil courts to bring such actions, *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002), and so the state certainly cannot criminalize such activity, *see, e.g., NAACP v. Button*, 371 U.S. 415, 417-38 (1963). The RR gives this weighty matter no attention at all. (RR *passim*).

The Magistrate Judge did find it important that the government alleges the aforementioned "hacking" lawsuits were made from whole cloth, (RR 10), and thus perhaps found these "objectively baseless" so as to strip away any constitutional protection, *see, e.g., Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Assuming that is the reasoning the Magistrate Judge had in mind, it overlooks a key aspect of the government's legal theory: the Copyright Act lawsuit allegations (*prima facie* valid and thus constitutionally protected) are commingled and intertwined with the "hacking" lawsuit allegations (alleged to be baseless and thus not constitutionally protected). (*E.g.,*

13

ECF 1 at 1-2 (overview paragraph commingles both categories into single scheme)).

When, in this way, the government propounds a legal theory that intermixes one proper ground (allegedly baseless "hacking" lawsuits) with another ground that is unconstitutional or legally invalid (meritorious and thus constitutionally protected Copyright Act lawsuits), then the entire theory must fall. *See United States v. Goodner Bros. Aircraft, Inc.,* 966 F.2d 380, 384 (8th Cir. 1992). This is because one can never tell whether a jury's decision rests on the constitutional ground, the unconstitutional ground, or a mixture of both. *Id.* Accordingly, the government's theory is unconstitutional, and so dismissal is required for that additional reason.

### D.     This prosecution is subject to categorical bar

Last, the Magistrate Judge rejects the defense thesis that *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984) and its progeny present a categorical bar to the instant prosecution concerning activities wholly internal to civil litigation. (RR 7-10). But here again, the reasoning is flawed or incomplete.

First, the RR points out that *I.S. Joseph* does not preclude traditional criminal proscriptions, such as perjury and contempt. (RR 7). The defense has never said otherwise, and indeed this is precisely why the defense did not move to dismiss Count 18, which alleges a perjury conspiracy. (ECF 1 at 30-35).

Rather, the question here is whether (for lack of a better term) RICO-type offenses like extortion (*see, e.g., I.S. Joseph*) and mail fraud (*see, e.g., Pendergraft*) are categorically barred. At least with respect to activities <u>wholly internal to the litigation itself</u>, *e.g.,* filing a claim, filing supporting papers and affidavits, presenting evidence, and the like. Judicial

14

officers in this district and elsewhere have indicated that a categorical bar should apply in such situations. *Luther v. Am. Nat'l Bank of Minn.*, Civ. No. 12-1085, 2012 WL 5471123, at *6-*7 (D. Minn. Oct. 11, 2012) (collecting cases). So too here.

The Magistrate Judge relies on *United States v. Eisen,* 974 F.2d 246 (2d Cir. 1992), which permitted a criminal fraud prosecution based upon concoction of wholly "fake evidence" to be used in later civil proceedings and to procure settlements. *Id.* at 253. But there, the "fake evidence" was <u>wholly external</u> to the later civil litigation activities, and in any event was actually designed to trick civil defendants and insurers who wrote the settlement checks. (ECF 49 at 34-35). Not so here, as discussed throughout these pages. Contrary to the RR's conclusion, this prosecution is foreclosed by the categorical bar suggested by *I.S. Joseph* and its progeny.

### IV. Conclusion

For all these reasons, the defense respectfully requests that the Court overrule the RR and dismiss Counts 1-17 of this prosecution.

Dated: August 14, 2017              Respectfully submitted,

*s/ Manny K. Atwal*

MANNY K. ATWAL
Attorney ID No. 282029
Office of the Federal Public Defender
District of Minnesota
U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5858